**Ronnie W. BEERE and Laura E. Beere, Appellants,**

v.

**Richard DUREN and Barbara Duren, Appellees.**

No. 09–97–213CV.

Court of Appeals of Texas, Beaumont.

Jan. 21, 1999.

Submitted Dec. 10, 1998.

Decided Jan. 21, 1999.

Rehearing Overruled Feb. 11, 1999.

William B. Connolly, Houston, for appellant.

Ruben Hope, Jr., Hope, Causey & Schlacks, J. Lynn Martin, Conroe, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

This is an appeal from a take-nothing judgment. Appellants prosecute this cause under the auspices of TEX. R.APP. P. 34.6(c) as a limited appeal. Under Rule 34.6(c)(4), we must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated issues. Appellants raise two complaints, *viz:*

> Issue One: The trial court erred in granting judgment for appellees, and disregarding jury findings favorable to appellants without a motion to disregard, and in not entering a judgment enforcing the property restrictions and abating the nuisance.
> Issue Two: The trial court erred in not disregarding the jury finding that plaintiffs were not entitled to any reasonable and necessary attorneys fees in light of uncontradicted testimony on said fees and a mandatory statute requiring that attorneys fees be awarded.

The record reflects that the parties are neighbors. Appellants brought suit requesting, among other things, enforcement, through injunctive relief, of written property restrictions relative to construction of improvements by appellees. A jury was empaneled, testimony was elicited, and special issues presented to the jury. Specifically, the jury answered the following special issues thusly:

### QUESTION NO. 1

Did the DURENS and KEASLING construct improvements on the DUREN PROPERTY which were in violation of the Property Restrictions?
Answer: "Yes" or "No"
Answer: <u>yes</u>

### QUESTION NO. 2

Did the DURENS and KEASLING divert the natural flow of surface waters or permit such diversion(s) to continue in a manner that caused damage to the BEERE PROPERTY by the overflow of the diverted water?
Answer: "Yes" or "No"
Answer: <u>no</u>

### QUESTION NO. 4

Did the negligence, if any, of the persons named below proximately cause the Plaintiffs' damages?
Answer "Yes" or "No" for each of the following:
a. Richard and Barbara Duren <u>No</u>
b. Ronnie W. Beere and Laura Beere <u>No</u>
c. Lawrence Keasling <u>No</u>

. . . .

### QUESTION NO. 7

Have Richard Duren and Barbara Duren created a nuisance on their property which affects Ronnie W. Beere and Laura Beere?
A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it.

Answer: "Yes" or "No"
Answer: <u>yes</u>

### QUESTION NO. 8

What is a reasonable fee for the necessary services of Ronnie W. Beere and Laura Beere's attorney in this case, as to the claims against Richard Duren and Barbara Duren stated in dollars and cents?
Answer with an amount for each of the following:
a. For preparation and trial.
Answer: <u>0.00</u>
b. For an appeal to the Court of Appeals.
Answer: <u>0.00</u>
c. For an appeal to the Supreme Court of Texas.
Answer: <u>0.00</u>

In their brief, appellants ask this Court for what amounts to injunctive relief on the issue of property restriction violations by rendering a mandatory injunction ourselves, or remanding to the trial court with instructions to enforce said restrictions based upon a proposed judgment submitted by appellants and contained in Appendix F of their brief. Appellants also request similar relief with regard to attorneys fees.

In Texas, parties to an action governed by equitable principles, such as a petition for injunctive relief, are entitled to a jury trial. *See State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex.1979). In such an action, the jury's verdict is not merely advisory. *Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 390 (Tex.1965). On the contrary, the verdict in an equity action is binding as to the facts determined by the jury. *Texas Pet Foods*, 591 S.W.2d at 803. However, the Court in *Texas Pet Foods* recognized a second appellate inquiry in equitable actions: "The jury does not determine the expediency, necessity, or propriety of equitable relief.... The determination of whether to grant an injunction based upon the ultimate issues of fact found by the jury is for the trial court, exercising chancery powers, and not the jury." *Id.* In the instant case, the fact that the trial court did not enter a judgment containing injunctive relief in appellant's favor does not mean that the trial court disregarded the jury's answer to questions one and seven. The trial court still had discretion, under its chancery powers, to decline injunctive relief. It is under these circumstances that we must discern whether a clear abuse of discretion has taken place in denying injunctive relief to appellants. *See Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 533 (Tex.App.—Tyler 1992, writ denied). An abuse of discretion in denying injunctive relief arises only when the trial court's decision is not supported by some evidence of substantial and probative character. *Morris v.*

*Collins*, 881 S.W.2d 138, 140 (Tex.App.—Houston [1st Dist.] 1994, writ denied). We will therefore consider the jury's answers to questions one and seven as having been proven by both legally and factually sufficient evidence and proceed to the second prong of *Texas Pet Foods*, that of whether the trial court clearly abused its discretion in failing to enter the equitable relief requested by appellants.[1]

TEX. PROP.CODE ANN. § 202.003(a) (Vernon 1995) provides that a restrictive covenant shall be liberally construed to give effect to its purposes and intent. In the instant case, it is undisputed that both parties constructed their homes on lots abutting "the Golf Course of Lake Conroe." In the preamble to the property restrictions of the parties' subdivision, the following general purposes are set out:

> NOW, THEREFORE, Declarant hereby adopts, establishes and imposes upon SECTION IV OF WEDGEWOOD, and declares the following reservations, easements, restrictions, covenants and conditions, applicable thereto, all of which are for the purposes of enhancing and protecting the value, desirability and attractiveness of said Property, which Restrictions shall run with said Property and title or interest therein, or any part thereof, and shall inure to the benefit of each owner thereof.

To that end, the property restrictions contain a variety of conditions with which the property owners must abide. Ordinarily, unless a restrictive covenant is removed by agreement of all interested property owners or by declaratory judgment, the covenant may be enforced by any interested property owner. *Giles v. Cardenas*, 697 S.W.2d 422, 427 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). However, a restrictive covenant can become unenforceable be-

---

1. The record before us reflects that appellees did not object to answers one and seven, nor request the trial court to disregard said answers. Indeed, appellees filed a motion for judgment on the verdict which was granted. It is well established that a party who moves for judgment on the verdict cannot complain on appeal that there is either no evidence or insufficient evidence to support the jury findings, the reason being that by so doing, the party is taking inconsistent positions. *See Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319, 322 (Tex.1984). As appellees' cross-point attempts to attack the evidentiary support for the answers to questions one and seven, it is overruled.

cause of abandonment, acquiescence or waiver. *Id.* In a suit to enforce restrictive covenants, the defendant has the burden to prove abandonment or any other defense which he may have to the suit. *Id.* In the instant case, although appellees make much of the claim that they obtained a "variance" from the appropriate residential architectural committee permitting them to build the fence and timber wall in violation of the building restrictions, as a defensive issue and fact question, it was appellees' burden to request an issue be submitted to the jury. Because no such issue was requested by appellees nor submitted to the jury, we find that such a defensive "finding" can play no part in the trial court's ultimate refusal to issue the injunctive relief requested. As such, our review will not include substantive consideration of any defensive issues that should have been requested and/or presented to the jury as factfinder.

■ In determining whether the trial court abused its discretion in refusing appellants' requested injunctive relief, we rely on language set out in *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943 (Tex.1958). *Cowling* involved a declaratory judgment suit in which the plaintiffs hoped to have the trial court rule that certain restrictive covenants, specifically one that restricted use of the lots in the subdivision "for residence purposes only," were still valid, binding and enforceable in the entire subdivision. *Id.* at 944. The trial court ruled against the plaintiffs finding it no longer just and equitable to enforce the restrictive covenants to prevent the use of a certain tract for business and commercial purposes. *Id.* at 945. The court of appeals affirmed the trial court's judgment. The Supreme Court reversed. While *Cowling* involved a "residence purposes only" building restriction, the Court made the following preliminary observations with regard to reviewing findings involving restrictive covenants by courts of equity:

> There are certain rules of law by which a court of equity must be guided in determining whether to enforce a residential-only restriction. It may refuse to enforce it because of the acquiescence of the lot owners in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it. [citations to secondary authority material omitted] It may also refuse to enforce it because there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant. [citations to secondary authority material omitted]

*Id.* at 945.

> The equities favoring the particular owner [alleged violator] is only one facet of the judicial inquiry. Those equities must be weighed against the equities favoring the lot owners who, having acquired their property on the strength of the restriction, wish to preserve the residential character of the area. The judgment must arise out of a balancing of equities or of relative hardships. 5 Restatement of the Law of Property § 563. In paragraph c of § 563 it is said: "It is not sufficient to create the disproportion [of harm] that will justify refusing to grant injunctive relief that the harm ensuing from granting such relief will be greater than the benefit gained thereby. When the disproportion between harm and benefit is the sole reason for refusing relief, the disproportion must be one of considerable magnitude."

*Id.* at 946.

In the instant case, a review of the abbreviated reporter's record before us provides little explanation as to why appellees needed to build the fence and timber wall in violation of the strict mandates of the property restrictions. The record does contain some explanatory testimony from Walter Berwick, the developer of the subdivision in question, and formerly the head of the architectural committee to which all building plans and requests for "variance" had to be submitted for approval. In response to questions from appellants' trial counsel, Berwick responded as follows:

> Q. And a variance is some sort of extreme necessity, or something out of the ordinary that would require a change to the restrictions, is that correct?
>
> A. That's correct.

Q. Alright. Let's talk about this 6 foot wood fence.

A. Yes sir.

Q. Some of the circumstances that require a variance, topography. Is there anything about the topography between these two houses that would require a 6 foot wood fence?

A. No sir.

Q. Okay, is there anything about the natural obstruction on the property that would require a 6 foot wood fence?

A. No sir.

Q. Is there anything about the lot configuration, or the lot size?

A. No sir.

Q. Is there any hardship, or esthetic, or environmental considerations that would require a variance?

A. Well, if you want to put it under the hardship, I did consider it a hardship the way that the Beeres totally— I can't even think of a nice word to use— intimidated, fooled with the Durens the whole time, that they would not even have to look at each other.

Q. The point of that fence was to obstruct the view between the two houses, was it not?

A. So that they did not have to look at each other.

Q. To obstruct the view.

A. Well, I didn't say that.

Short of Mr. Berwick's rather candid admission, the record is silent as to the reasons for the appellees' need to violate the property restrictions as to the fence and the timber wall. Appellant Ronnie Beere testified that he and his wife chose the Wedgewood subdivision to live in because Mr. Berwick assured them "of how strong the deed restrictions were— they were the strongest deed restrictions in Conroe— and the view of the neighborhood, and the upkeep of the neighborhood is why we decided to move from Houston out to Conroe." The portions of the reporter's record contained in the appellees' brief focus on the drainage issue, which was answered by the jury in appellees' favor and not a part of this limited appeal; and on the "variance" issue.

From the record before us, we are not faced with acquiescence of the appellants in substantial violations of the property restrictions so as to amount to an abandonment of the covenant or waiver of the right to enforce it. The evidence is entirely to the contrary. Appellants made their complaints known to Mr. Berwick prior to construction of the fence and timber wall. There is also no evidence of such a change in the conditions in the subdivision that it was no longer possible to secure the benefits sought to be realized by the property restrictions. While these two reasons discussed in *Cowling*, 312 S.W.2d at 945, are not exhaustive as to the equities involved in the instant case, they are factors to be considered in our analysis of whether the trial court abused its discretion. No evidence was elicited as to what hardship would be placed on appellees if they were required to remove the fence and reduce the size of the timber wall to come into compliance with the property restrictions. As for appellants, they were deprived of the view of the golf course to some degree because of the existence of appellees' opaque wooden fence. At any rate, there is no evidence that the harm to appellees in complying with the property restrictions would be "one of considerable magnitude" so as find the equities in their favor. *Id.* at 946.

As noted earlier, § 202.003(a) of the Property Code requires a restrictive covenant to be liberally construed to effectuate its purpose and intent. Recognition of the aesthetic value of lots which abut the golf course is quite evident in the various sections of the property restrictions. The wording of Section 3.05(2) is explicit: "To protect views and maintain the character of the community, no structure, out building, opaque fence or wall may be constructed within the 20 foot rear setback of Lots abutting the Golf Course of Lake Conroe." Section 3.14(b) also contains the phrase, "To protect views and maintain the character of the Subdivision, . . ." Section 3.14(b)(1) further specifies "ornamental iron" or "other decorative fence . . . that would not unreasonably obstruct the view of the Golf Course by adjacent Property Owners may be constructed[.]"

From the explicit language of the property restrictions favoring a clear and unobstructed view of the golf course; from the fact that appellees' fence was constructed solely to obstruct the parties' views of each other, but resulted in the practical effect of obstructing appellants' view of the golf course; from the fact that the timber wall was constructed in violation of the property restrictions for reasons not apparent in the record before us; from the fact that appellants made their complaints known "from day 1;" from the fact that the subdivision has not undergone a change of conditions to the extent that the property restrictions are superfluous; from the lack of evidence of any hardship of "considerable magnitude" should appellees be made to comply with the property restrictions; from the fact that appellees were fully aware of the terms of the property restrictions prior to constructing the improvements in question; from the fact that evidence indicates that appellants chose the Wedgewood subdivision on the assurances of the developer, Walter Berwick, that the property restrictions were the "strongest" in Conroe; and from the fact that no defensive issues were asked for or submitted to the factfinder can we but reach one conclusion: the trial court clearly abused its discretion in failing to grant injunctive relief to appellants as to the property restriction violations.

 As for the issue regarding appellants' attorneys fees, the determination of the amount to be awarded as a reasonable attorney's fee is a question of fact to be determined by the trier of fact and the award, if any, must be supported by competent evidence. *Great American Reserve Ins. Co. v. Britton,* 406 S.W.2d 901, 907 (Tex.1966). However, whether attorneys fees are authorized in a particular case is a question of *law* to be determined by the court. *Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 708 (Tex.App.—El Paso 1993, no writ). Because appellants have prevailed on appeal on their action to enforce property restrictions, attorneys fees are authorized because TEX. PROP.CODE ANN. § 5.006 (Vernon 1984) is mandatory. *See Briargrove Park Property Owners, Inc. v. Riner,* 867 S.W.2d 58, 61 (Tex.App.—Texarkana 1993, writ denied); *Inwood North Homeowners' Ass'n,*

*Inc. v. Meier,* 625 S.W.2d 742, 744 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ). *See also, LaFreniere v. Fitzgerald,* 669 S.W.2d 117, 119 (Tex.1984).

In the instant case, the record before us indicates that the proof of reasonable and necessary attorneys fees by appellants at trial included fees incurred as to the co-defendant Lawrence Keasling. As Keasling is not a party to the instant appeal, and this appeal is expressly limited to the existence of trial court error in denying injunctive relief to enforce property restrictions, we must remand this cause to the trial court for a new hearing on attorneys fees incurred as to appellees only. We sustain appellants' two issues, reverse the trial court's judgment only as to its denial of injunctive relief to enforce the property restrictions and as to attorneys fees, and remand the cause for the issuance of injunctive relief consistent with this opinion, and for a new hearing on the amount to be awarded appellants' trial counsel for attorneys fees.

REVERSED AND REMANDED.