# NO. 12-07-00420-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JON ERIC JACKS, INDIVIDUALLY AND D/B/A JON ERIC JACKS DEVELOPMENT, APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *G. A. BOBO, JR., APPELLEE* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jon Eric Jacks, individually and doing business as Jon Eric Jacks Development, appeals from the trial court's judgment in favor of G.A. Bobo, Jr. awarding injunctive relief, damages, and attorney's fees. Jacks raises four issues on appeal. We reverse the award of damages and attorney's fees. In all other respects, we affirm the trial court's judgment.

## BACKGROUND

Jacks purchased lots 5, 6, and 7 in Block 5 of the Green Acres Subdivision in Longview, Gregg County, Texas. Jacks envisioned a garden home gated development with eight houses on the three lots facing a private street and cul-de-sac in its center. Jacks prepared a replat of the three lots reflecting his intentions and submitted it to the City of Longview. In early February, Jacks poured foundation slabs on lots 5 and 7 for the first two houses of the contemplated eight house development.

Bobo owned, and for over fifty years had lived on, lot 10, block 6 of the subdivision across Oxford Lane from Jacks's three lots. On March 2, 2007, Bobo filed suit for a temporary restraining

order, a temporary injunction, and, on final hearing, a permanent injunction to compel Jacks's compliance with the restrictive covenants for the subdivision requiring homes on lots in the subdivision (1) to front the street upon which each lot faces and (2) to be set back thirty-five feet from the front property line. Bobo also requested damages under Texas Property Code subsection 202.004(c) for each day's violation of the restrictive covenants. Jacks filed a general denial on March 19, 2007. On March 22, 2007, the trial court granted a temporary injunction restraining Jacks from constructing or continuing any work on improvements on the lots that did not face Oxford Lane and that did not comply with the thirty-five foot setback provision in the restrictions.

Since Jacks had poured the slabs so that the homes would face the planned street rather than Oxford Lane, the slabs were between ten and fifteen feet closer to Oxford Lane than the thirty-five feet required by the restrictions. Although not required by the court's temporary injunction, on April 7, Jacks sawed off, altered, and reoriented the slabs so that they were at least thirty-five feet from and facing Oxford Lane. Jacks later testified at the hearing on the permanent injunction that his alteration and reorientation of the foundation slabs were dictated by the time limitations imposed by a like kind or deferred exchange that was the source of the money he used to purchase the lots and build the houses.

On July 27, 2007, approximately a week before trial, Jacks filed his amended original answer alleging the enforcement of the deed restrictions was barred by the doctrine of waiver.

It was undisputed at trial that Jacks was then in compliance with the deed restrictions that Bobo sought to enforce. Nevertheless, much of the testimony and other evidence that Jacks elicited or introduced during the trial was devoted to an attempt to show the architectural restrictions were rendered invalid, and therefore unenforceable, because of their frequent violation by Bobo and others.

At the close of the bench trial, the trial court granted the permanent injunction, and awarded Bobo $8,200 in damages as well as attorney's fees. In his findings of fact, the trial judge found, *inter alia*, (1) that there had been no waiver of the architectural restrictions alleged to have been violated, (2) that Jacks had been in open and unexcused violation of the restrictions for forty-one days prior to the alteration and reorientation of the slabs, (3) that Bobo would suffer irreparable harm and

2

would have no adequate remedy at law unless a permanent injunction was entered enforcing the restrictions, and (4) that under Texas Property Code subsection 202.004(c), Bobo was entitled to recover damages from Jacks of $200 per day for forty-one days, or a total of $8,200.

## MOOTNESS

In his first issue, Jacks contends the trial court's entry of a permanent injunction was void as an impermissible advisory opinion, because Bobo's claim for injunctive relief was moot at trial.

**Applicable Law**

This court has previously summarized the mootness doctrine as follows:

> The requirement that an action present a "live controversy" is an essential component of subject matter jurisdiction. *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 244 (Tex. 1994). If at any stage of the proceeding there ceases to be an actual controversy between the parties, a case becomes moot. *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). Once a case or claim is determined to be moot, a court lacks subject matter jurisdiction to decide the issues. *Euless v. Dallas/Ft. Worth Airport Bd.*, 936 S.W.2d 699, 703 (Tex. App.–Dallas 1996, writ denied).

*Black v. Jackson*, 82 S.W.3d 44, 51-52 (Tex. App.–Tyler 2002, no pet.). Absent a live controversy, any decision would be but an advisory opinion, and, under our constitution, courts have no jurisdiction to render advisory opinions. *Speer v. Presbyterian Children's Home and Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993). The trial court must determine "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 898, 92 L. Ed. 2d 1303 (1953). If "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome[,]" the case is moot. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (citing *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)).

However, the voluntary discontinuance of the allegedly illegal conduct does not, in itself, make the case moot and thereby deprive the trial court of the power to hear and determine the case and grant injunctive relief. *W. T. Grant Co.*, 345 U.S. at 632-33, 73 S. Ct. at 897. An unsettled controversy may survive the cessation of the challenged activity, such as a dispute over the legality of the challenged practices. *Id.*, 345 U.S. at 632, 73 S.Ct. at 897. The dispute may remain alive even when the cessation of the challenged conduct is accompanied by protestations of repentance and an

expressed intent to comply.  *Id.*

Nevertheless, a case may be moot "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *Id.; see also Lubbock Prof'l Firefighters v. City of Lubbock*, 742 S.W.2d 413, 419 (Tex. App.–Amarillo 1987, writ ref'd n.r.e.).  "The burden is a heavy one." *W.T. Grant Co.*, 345 U.S. at 632, 73 S.Ct. at 897.

**Discussion**

Jacks argues on appeal that there ceased to be an actual case or controversy when he modified the slabs on lots 5 and 7 so that they were set back thirty-five feet from the front property line and faced Oxford Lane, thereby complying with the two restrictions Bobo sought to enforce by injunction. He insists that since there was no violation to enjoin at the time of trial, the controversy was moot and the trial court lacked jurisdiction to grant Bobo's claim for injunctive relief.

Jacks's modification of the foundation slabs to comply with the restrictions was compelled by the time constraints imposed by the like kind exchange arrangement that was the source of his financing for the project.  Jacks testified that if he had not made the changes to comply with the restrictions, he could not have finished the houses in time to avoid losing a tax advantage amounting to thousands of dollars.  The action taken was not an abandonment of his challenge to the restrictive covenants or an expression of his intent to abide by them in the future.  Four months after making the changes, Jacks continued to urge the invalidity of the restrictions throughout the trial.  There is nothing in the record from which we can infer his intent to voluntarily abide by them.

Jacks still owns property in the subdivision that, but for the restrictive covenants, would be susceptible to future development.  In concluding his final argument at trial, Jacks's attorney asked the court to deny the permanent injunction and "*allow Mr. Jacks to continue to build the remaining houses in a manner that he sees is - - is most beneficial and most profitable.*"  As late as the hearing on the motion for new trial, Jacks continued to attack the enforceability of the restrictions and professed an intent to further subdivide the property.  In the absence of effective restraint, Jacks would be free to ignore the restrictions.

Despite Jacks's modification of the slabs on lots 5 and 7 to conform to the restrictions, there remained the underlying dispute between the parties over their validity and enforceability.  There continued to exist an "actual controversy, and adverse interest . . . with a subject-matter on which

4

the judgment of the court can operate[.]" ***Walling v. Helmerich & Payne***, 323 U.S. 37, 43, 65 S. Ct. 11, 15, 89 L. Ed. 29 (1944). The issue was not moot. The trial court had jurisdiction to enter the permanent injunction. Jacks's first issue is overruled.

## LEGAL AND FACTUAL INSUFFICIENCY

In his second and third issues, Jacks maintains the evidence is both legally and factually insufficient to support injunctive relief.

### Applicable Law

In reviewing the legal sufficiency of the evidence, "appellate courts must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence if reasonable jurors could not." ***City of Keller v. Wilson***, 168 S.W.3d 802, 807 (Tex. 2005). The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. ***Id.*** at 819. The reviewing court must assume that the fact finder credited testimony favorable to the verdict and did not believe testimony to the contrary. ***Id.*** The reviewing court must assume that the fact finder resolved all conflicts in the evidence and all conflicting inferences reasonably drawn from the evidence in accordance with the verdict. ***Id.*** at 821.

In reviewing a challenge to the factual sufficiency of the evidence supporting a finding that favors a party that had the burden of proof, the appellate court may set aside the finding only if a neutral review of all the evidence demonstrates that the finding is clearly wrong and manifestly unjust. *See **Garza v. Alviar***, 395 S.W.2d 821, 823 (Tex. 1965). Reversal may occur because the evidence was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by contrary proof. ***Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.***, 156 S.W.3d 630, 637 (Tex. App.–Tyler 2004, no pet.).

Rule 693 of the Texas Rules of Civil Procedure provides that "[t]he principles, practice and procedure governing courts of equity shall govern proceedings in injunctions when the same are not in conflict with these rules or the provisions of the statutes." TEX. R. CIV. P. 693. Therefore, it is important to bear in mind that the decision of whether to grant an injunction based upon the ultimate issues of fact found by the jury is for the trial court, exercising chancery powers, and not the jury. ***State v. Pet Foods, Inc.***, 591 S.W.2d 800, 803 (Tex. 1979). The Texas Supreme Court has observed

that it is the trial court who decides the expediency, necessity, or propriety of equitable relief including the determination of the probability of the resumption or continuance of the challenged conduct. *Id.* The court explained as follows:

> We do not consider the question of likelihood of [defendant's] resumption or continuation of the acts enjoined as being an ultimate issue of fact for the jury. . . . A jury in equity, even under a blended system, does not decide the issue of expediency, necessity or propriety of equitable relief. . . . It was an element deducible from the circumstances for the court to consider in determining whether wrong or injury might be anticipated and whether chancery powers should be exercised. It constituted here, in effect, a mixed question of law and fact at most. Such questions are not for the jury in injunction cases.

*Id.* (quoting *Alamo Title Co. v. San Antonio Bar Ass'n*, 360 S.W.2d 814, 816 (Tex. Civ. App.–Waco 1962, writ ref'd n.r.e.)).

In an appeal from a permanent injunction, the standard of review is based upon a clear abuse of discretion. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). "The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it." *W. T. Grant Co.*, 345 U.S. at 633, 73 S. Ct. at 898.

**Discussion**

In *Alamo Title*, the trial court permanently enjoined the title company from preparing legal instruments in real estate transactions. *Alamo Title*, 360 S.W.2d at 814. Alamo Title urged almost identical arguments to those advanced by Jacks in the instant case. Alamo Title contended that the trial court erred in not dismissing the case as moot, because there was no evidence that there was a reasonable probability or threat that the acts enjoined would recur in the future. The title company insisted that the uncontradicted evidence established the contrary. *Id.* at 814-15.

Under the threat of impending litigation, the title company ceased to prepare legal instruments and declared its resolve to abandon the practice. The court of appeals held that this did not preclude the permanent injunction despite the title company's reiterated renunciation of the practice during the trial and its expressed intent to refrain from the conduct. *Id.* at 817.

Jacks is an experienced real estate developer. He reviewed the restrictive covenants, including the two restrictions at issue, before he bought the property. Jacks devised a plan of

6

development calling for multiple houses on the three lots that he knew conflicted with the restrictions as written. He never sought a release of the subject lots from the restrictions before commencing development despite his knowledge of the specified procedure. At trial, the following exchange occurred when Jacks was asked if he still had plans for further development of the lots:

> Q. And do you have plans for additional homes on lots 5, 6 and 7 as we sit here today?
>
> A. Does it matter?
>
> Q. Well, sir, I guess that's up to the Court whether it matters or not.
>
> A. We have no plans in writing. No plats other than probably an acre and a half of vacant land.

Jacks still owns undeveloped property on the three lots in question. As late as the hearing on the motion for new trial, he indicated that he contemplated further development of the lots. Jacks's modification of the foundations was not an admission of the validity of the restrictions and did not represent a disavowal of his past position. Throughout the lower court proceedings, Jacks insisted the restrictions were unenforceable, asking the court in his concluding argument to allow him to build the remaining houses in the way that he sees is most beneficial and most practical.

The evidence was both legally and factually sufficient to support the trial judge's determination that a permanent injunction was required to restrain Jacks from future violations. The trial court did not abuse its discretion in granting the permanent injunction. Jacks's second and third issues are overruled.

### INDIVIDUAL RECOVERY OF DAMAGES UNDER SUBSECTION 202.004(C)

In his fourth issue, Jacks maintains that Bobo does not have standing to collect damages under Texas Property Code subsection 202.004(c). In its findings of fact, the trial court found that "[P]laintiff is entitled to recover statutory damages from Defendant in the amount of $8,200 for 41 days at $200.00 per day in accordance with TEX. PROP. CODE § 202.004(c)." In its conclusions of law, the court concluded "[a] court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation. (TEX. PROP. CODE ANN. § 202.004(c)." The trial court awarded the maximum damages allowable under this subsection. Bobo proved no actual damages.

Jacks raises Bobo's standing for the first time on appeal. Bobo insists that Jacks's failure to

raise the issue in the trial court by a timely request, objection, or motion waived his right to complain on appeal. *See* TEX. R. APP. P. 33.1. Bobo also argues that nothing in subsection 202.004(c) precludes the award of discretionary civil damages to individual property owners within the subdivision.

**Applicable Law**

Whether a particular remedy is available under a statute is a question of law for the court. *See **Johnson v. City of Ft. Worth***, 774 S.W.2d 653, 656 (Tex. 1989). A trial court's conclusions of law are reviewed de novo as legal questions with no deference to the trial court's conclusion. ***State v. Heal***, 917 S.W.2d 6, 9 (Tex. 1996). Individual provisions of a statute are to be read in context with the entire statute to determine the legislature's intent. ***Bridgestone/Firestone, Inc. v. Glyn-Jones***, 878 S.W.2d 132, 133 (Tex. 1994). A provision in a statute must not be given a meaning inconsistent with the statute's other provisions. ***Barr v. Bernhard***, 562 S.W.2d 844, 849 (Tex. 1978).

Standing is a component of subject matter jurisdiction. ***Tex. Ass'n of Bus. v. Tex. Air Control Bd.***, 852 S.W.2d 440, 445 (Tex. 1993). "Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties. . . ." ***Id.*** at 445-46.

Texas Property Code subsection 202.004 provides as follows:

> (a)  An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.
>
> (b)  A property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument.
>
> (c)  A court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation.

TEX. PROP. CODE ANN. § 202.004 (Vernon 2007). A property owners' association is "an incorporated or unincorporated association owned by or whose members consist primarily of the owners of the property covered by the dedicatory instrument and through which the owners . . . manage or regulate the residential subdivision. . . ." ***Id.*** § 202.001(2).

Both courts that have addressed the question have held that an individual owner bringing suit

on his own behalf and not as a representative designated by the other owners may not recover civil damages under subsection 202.004(c). *See* **Hawkins v. Walker**, 233 S.W.3d 380, 389-90 (Tex. App.–Fort Worth 2007, no pet.); **Quinn v. Harris**, No. 03-98-00117-CV, 1999 WL 125470, at *7-8 (Tex. App.–Austin Mar. 11, 1999, pet. denied) (not designated for publication).

**Discussion**

The threshold inquiry in ascertaining Bobo's right to recovery is the determination of Bobo's standing, as a private lot owner, to pursue the remedy created by the statute. Without standing, Bobo could not seek recovery under the statute, and the trial court would have no authority to award damages. "[S]tanding is a component of subject matter jurisdiction; it cannot be waived and may be raised for the first time on appeal." **Tex. Air Control Bd.**, 852 S.W.2d at 445. Therefore, we shall address Jacks's complaint.

In construing the statute, its individual provisions must be read in the context of the entire statute in order to determine the legislature's intent. **Barr**, 562 S.W.2d at 849. "[O]ne provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." **Id.** Subsection 202.004(a) provides that a presumption of reasonableness should be applied to "[a]n exercise of discretionary authority by *a property owners' association or other representative designated by an owner of real property . . .* unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." TEX. PROP. CODE ANN. § 202.004(a) (Vernon 2007) (emphasis added). Subsection 202.004(b) states that "*[a] property owners' association or other representative designated by an owner of real property* may initiate, defend, or intervene in litigation . . . affecting the enforcement of a restrictive covenant. . . ." TEX. PROP. CODE ANN. § 202.004(b) (emphasis added).

Although individual property owners are not expressly excluded, subsection 202.004(b) specifically provides that a "property owners' association or other representative designated by an owner of real property" may sue to enforce a restrictive covenant; individual property owners are nowhere identified in the statute as persons or entities authorized to "initiate, defend or intervene in litigation . . . affecting the enforcement of a restrictive covenant. . . ." These two subsections plainly contemplate enforcement actions by property owners' associations or owners' representatives. When subsection 202.004(c) is considered in the context of the statute's other provisions, it is evident that

9

the legislature intended the civil damages provided in the subsection to be available only to the entities expressly named in the statute and to no others. Any other construction would be inconsistent with the other provisions of the statute. *See Hawkins*, 233 S.W.3d at 389-90.

The trial court erred in concluding that an individual property owner may bring suit to recover civil damages under subsection 202.004(c). Bobo is neither a property owners' association nor a designated representative of the subdivision's property owners. He brought suit in his individual capacity, and he is therefore not entitled to recover civil damages under the subsection. Jacks's fourth issue is sustained.

## ATTORNEY'S FEES

In its judgment, the trial court awarded Bobo $6,000 for attorney's fees through trial and the entry of judgment and $8,000 in the event of an unsuccessful appeal to the court of appeals. We have overruled Jacks's first, second, and third issues, by which he challenges the trial court's grant of a permanent injunction. However, we have sustained his fourth issue relating to the trial court's award of $8,200 in civil damages to Bobo. We conclude that, in the light of our disposition of the case, the trial court should reconsider the question of appropriate attorney's fees. *See Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005).

## DISPOSITION

We *affirm* the trial court's judgment granting a permanent injunction. We *reverse* the trial court's judgment for Bobo on his claim for civil damages under subsection 202.004 of the Property Code and *render* judgment that Bobo take nothing on that claim. We *reverse* the trial court's award of attorney's fees to Bobo and *remand* to the trial court for further proceedings.

BILL BASS
Justice

Opinion delivered July 31, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*

(PUBLISH)