### CONTINENTAL CASUALTY CO. v. Mc-KINNON.

No. 13247.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 18, 1935.

McGown & McGown, B. E. Godfrey, and John M. Scott, Jr., all of Fort Worth, for appellant.

Marvin B. Simpson, Leo Brewster, and Harris Brewster, all of Fort Worth, for appellee.

MARTIN, Justice.

This is a case brought under the Workmen's Compensation Law of Texas. Jurisdictional questions were all fully covered by agreement in the court below, and the appeal raises no questions as to sufficiency of pleadings. Only a brief statement of the case is necessary to a proper understanding of the grounds of appeal and the decision of the court.

The appellee·recited in his cause of complaint that he was, at the time of the injury in question, and had been for some three weeks prior thereto, engaged as "manager" and "salesman" and "wrecker" of the lumber yard for W. Q. Kuykendall, doing business as Kuykendall Lumber Company in the city of Bluffdale, Erath county, Tex. Appellee recited that he had not worked in the same employment in which he was engaged at the time of his injury, or under the present employer, or for any other person, for substantially the whole of the year immediately preceding the date of the injury. It was alleged that other employees of the same class of the appellee working substantially the whole of the year immediately preceding appellee's injury, engaged in the same or similar employment in the same or neighboring place, were earning an average daily wage of $6, or an average weekly wage of $34.65.

By way of plea in the alternative, the appellee alleged that he had not worked in the employment of his present employer or any one else for substantially the whole of the year immediately preceding the injury, and that there were no other employees of the same class working substantially the whole of the year preceding his injury in the same or neighboring place, and therefore it was impractical to compute his average weekly wage in the manner provided in subdivisions 1 and 2 of section 1 of article 8309 (Rev. St.), and an average weekly wage of $34 per week computed by the·jury would be fair and just. It was alleged that the accident occurred while the appellee was riding into Fort Worth with his employer, together with other necessary allegations as to filing his claim with the Industrial Accident Board and appeal to the district court. The usual allegation was made of total permanent disability, or in the alternative permanent partial disability.

To these allegations the Continental Casualty Company, appellant, defendant below, filed an answer consisting of general demurrer, general denial, and numerous special exceptions to the pleading, none of which are presented as error in this court. After a trial by jury there was returned a verdict in which the jury found that the appellee was injured; that he was totally and permanently .disabled; that there were no other employees of the same class as that of appellee who had been working substantially the whole of one year immediately preceding the date of the injury and fixing the average weekly wage, which to them seemed fair and just, for the appellee at $18 per week.

The defendant, appellant herein, offered evidence that· the condition of the appellee was due to nephritis and arteriosclerosis. The jury answered that he had neither, and, based upon such jury verdict, the court entered a judgment for the appellee and against this appellant in the amount of $3,697.32, with interest.

Motion for new trial was overruled by the court and the case was duly appealed to this court. For convenience we designate the parties "plaintiff" and "defendant" as in the trial court.

■ It is first strenuously insisted ·by appellant that it was entitled to an instructed verdict, because the plaintiff failed to prove that it was impractical to prove his average weekly wage under, subdivision .2 of section 1 of article 8309.

It was shown by the testimony of the plaintiff and his employer, W. Q. Kuykendall, that about two weeks before the accident plaintiff, a carpenter and builder by

trade, was engaged by Kuykendall to go to Bluffdale in a nearby county and "wreck" a lumber yard the employer had bought at a bankruptcy sale, preparatory to shipping all the lumber in said yard to the yards of the Kuykendall Lumber Company at Fort Worth. For this service plaintiff was to receive as compensation $1.75 per thousand feet of the lumber so salvaged by him. On the day the plaintiff went to Bluffdale, or shortly thereafter, Kuykendall decided he would sell out a part at least of the lumber where it was and engaged plaintiff to take charge of sales there and to "manage" the business of the Bluffdale yard, and for this extra service plaintiff was to receive $1 per day and a commission of 10 per cent. on all sales he made. This was the arrangement in force up to the time of the injury and for a period of approximately two weeks. Kuykendall testified that plaintiff's wages, as computed by the bookkeeper in the office of the company, during the short time of his employment amounted to around $18 per week. This evidence discloses a very unusual sort of employment. His wages were to be computed upon three different standards, to wit, $1.75 per thousand feet for wrecking, 10 per cent. on sales, and $1 per day. The plaintiff testified that there were no other lumber yards in Bluffdale, and that the nearest one was in another town eight miles distant, and that he did not know what wages were paid to its manager.

Kuykendall testified that the work of "wrecking" a lumber yard is an unusual work in the lumber business, and also that there was no intention to make the Bluffdale yard a permanent business but to close it out as quickly as practicable. The court submitted the issue to the jury, and they found "that there was no employee of the same class as that of the plaintiff who had been working substantially the whole of one year immediately preceding November 3, 1933, in the same or similar employment in the same or a neighboring place."

We think the character of the employment, the uncertain threefold nature of his compensation, fully justified the court in submitting, and the jury in finding, that there was no other "yardstick" than subdivision 3 of section 1 of article 8309 by which to measure the weekly wage of the plaintiff. We therefore overrule the group of assignments of error relating to this question. Article 8309, R. S. 1925, § 1, subd. 3; Texas Employers' Ins. Ass'n v. Russell (Tex. Civ. App.) 16 S.W.(2d) 321, and cases there cited; United States F. & G. Co. v. Morgan (Tex. Civ. App.) 18 S. W.(2d) 810.

■ Assignment No. 2 attacks the sufficiency of the evidence to go to the jury as to the cause of the plaintiff's disability. We think appellant has ignored entirely, in the presentation of this question, the testimony of the plaintiff himself and has treated the case as a controversy between the medical experts called by plaintiff and defendant respectively to testify at the trial. It is true that the physician who testified for the defendant made out a clear case of pre-existing disease and disability resulting therefrom; and it is also true that the physician who testified for the plaintiff did not contradict his diagnosis, but admitted that he took no blood tests, no blood counts, no X-ray photographs, and only saw the plaintiff for about an hour shortly before the trial. So, in one sense, the testimony of the defendant's medical witness is uncontradicted. But the plaintiff shows by his own and other testimony that prior to the accident he was able to work. He was "wrecking lumber sheds," did "wreck" two of them; was able to and did "manage" the lumber yard at Bluffdale; was able to and did make $18 per week. That after the accident, from November 3, until December 24, 1933, he was in the hospital; that there were bruises, aches, and pains, impaired movement of hands, arms, and legs lasting down to the time of the trial. He described in minute detail how, in order to get his shirt on, he had to hang it upon two hooks, back himself into and gradually work his arms into the sleeves, and testified positively that no such condition existed prior to the injury. All this and much more testimony was introduced by plaintiff tending to connect his disability with the injury, and yet counsel, in able brief and argument, insist that the opinion of the expert was "uncontradicted testimony." We cannot agree with counsel after a careful reading of the statement of facts in this case. Nor do we believe from a careful consideration of the testimony of the learned physician that he ever intended to leave the impression that plaintiff's condition was wholly due to the physical ailments he discovered and described.

■ Error is assigned to the action of the court in admitting the testimony of Dr. Ika A. Withers as to matters of opinion based, in part, upon the history of the case as given him by the plaintiff. We find no proper bill of exceptions in the record supporting this assignment and therefore cannot consider it. It appears from the statement of facts that defendant's objection to any statement of the doctor based upon the history of the case, as related by the plaintiff, was sustained, and the opinions of the doctor, thereafter given, were based either upon his personal observation or upon hypothetical questions propounded to him by counsel. Moreover, the court instructed the jurors, verbally, at the time, that they could not consider what the plaintiff told the doctor, but only what the doctor found.

■ There is in the statement of facts a general bill based upon the length of time between the date of injury and the date of the doctor's examination and the absence of a showing that there were no intervening causes for plaintiff's present condition, which the court, rightly as we think, ruled was an objection going to the weight, rather than the admissibility of the testimony.

We believe we have covered all of the propositions briefed by the appellant, and, after a patient examination of the entire record, finding no reversible error, the judgment of the trial court is, in all things, affirmed.