Reversed and Remanded and Majority and Concurring Opinions filed April
7, 2009








Reversed and Remanded and Majority and Concurring Opinions filed April 7,
2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00592-CV

_______________

 

DEBRA J. MEEHL, MARK MEEHL, INDIVIDUALLY AND AS
OFFICERS AND AGENTS OF THE MAUREEN J. MEEHL BIOPOLAR/BPD FOUNDATION, INC., AND
THE MAUREEN J. MEEHL BIOPOLAR/BPD FOUNDATION, INC., Appellants

 

V.

 

ALFRED M. WISE, JR., KATHERINE D. WISE, JOHN P. HUNDL,
DONNA G. HUNDL, WILMER CONNER, MARGIE ANN ALEXANDER, JOHN T. HORN, MARTHA G.
HORN, JOHN T. HORN, JR., CHRISTOPHER BLAKE BROADWAY, PAULA LEE BROADWAY, JAMES
ZIMMER, MILDRED ZIMMER, ROBERT GALILEY, PATRICIA GALILEY, BILLY G. PHILLIPS,
BONNIE KAY PHILLIPS, FRANK HLAVINKA, BARBARA HLAVINKA, HOMERO CARDENAS, JANIE
CARDENAS, BILLIE A. PIRTLE, RICHARD ALLEN, JOYCE ALLEN, GEORGE E. HURST, THELMA
HURST, GARY FRUIDENBERG, A.J. LOWERY, JR., RONALD KORCZYNSKI, KATHY KORCZNYSKI,
MATTHEW MOUTON, AND ANNETTE MOUTON, Appellees

                                                                                                                                               


On Appeal from the 239th District Court

Brazoria County, Texas

Trial Court Cause No. 37460

                                                                                                                                                

 

 








M A J O R I T Y    O P I N I O N

In this case, we are asked to
determine whether the trial court erred in enforcing a 1965 deed restriction to
prevent homeowners from allowing a nonprofit corporation to operate a community
home for persons with bipolar disorder in the homeowners= residence.  We hold that the actual
or attempted enforcement of the deed restriction neither violates the federal
Fair Housing Act nor the Community Homes for Disabled Persons Location Act.  We
therefore dissolve the trial court=s order enjoining such operations,
reverse the trial court=s judgment, and remand the case for further proceedings
consistent with this opinion.  

I.  Factual
and Procedural Background

The parties own property in the
Carleton Acres Subdivision in Brazoria County, Texas.  With the exception of
two lots that are not at issue in this case, the deeds to the properties in the
subdivision incorporate a Declaration of Restrictions executed in 1965 and
renewed in ten-year increments thereafter.  The Declaration of Restrictions
provides that Ano tract, lot, parcel or building site in said subdivision shall be used
for any purpose other than that of a single family
residence . . . .@








In January 2006, Mark and Deborah
Meehl purchased two adjoining lots in the subdivision conveyed by warranty deed
expressly subject to the Declaration of Restrictions.  The Meehls immediately
began constructing a 3800-square-foot structure.  According to a newspaper
article published in The Facts on January 21, 2006, the Meehls planned
to operate the facility as a Aretreat, resource and educational center@ for persons with bipolar disorder,
and would be operated Ain a bed-and-breakfast style with four luxury guest
suites . . . .@  Nearly all of the Meehls= neighbors opposed the operation of
the facility in the subdivision.  On March 23, 2006, appellees (Athe Neighbors@) filed a petition for a temporary
restraining order and injunction prohibiting its further construction or
promotion.  As defendants in the suit, the Neighbors named the Maureen J. Meehl
Bipolar/BPD Foundation, Inc. (Athe Foundation@) and the Meehls, individually and as
officers of the Foundation.  The trial court temporarily enjoined the Meehls
and the Foundation from continuing construction, promotion, or advertisement of
the facility.  On July 6, the Meehls, individually and as officers of the
Foundation, filed a counterclaim for declaratory judgment and a permanent
injunction.  The case was tried without a jury on August 2, 2006.  Final
judgment in favor of the Neighbors, permanently enjoining the Meehls from
constructing and operating a community home, was entered on November 5, 2007.  

II.  Issues
Presented

The Meehls and the Foundation present
eleven issues on appeal.  In their first and tenth issues, they contend that
the trial court erred in denying their requests for declaratory relief and for
a permanent injunction pursuant to the Texas Community Homes for Disabled
Persons Location Act (Athe Community Homes Act@).  They assert in their second issue
that the trial court erred in determining that the Community Homes Act does not
apply in this case.  In their third and fourth issues, they challenge the trial
court=s ruling enforcing the restrictive
covenant and permanently enjoining them from operating a community home on the
property.  They argue in their fifth issue that the trial court erred in
concluding that the Meehls are not a protected class within the meaning of the
federal Fair Housing Act.  In their sixth and seventh issues, they challenge
the trial court=s conclusion that the strict enforcement of the restrictive
covenant would not constitute discrimination under the federal Fair Housing Act. 
Appellants contend in their eighth issue that the evidence is legally and
factually insufficient to support a finding that  their operation of a
community home would constitute a wrongful act, and thus, the trial court erred
in enjoining their operation of a community home.  In their ninth issue,
appellants argue that the trial court=s final judgment is so broad that it
precludes them from engaging in lawful activities that are a proper exercise of
their rights.  In their eleventh and final issue, they argue that the trial
court erroneously excluded evidence relevant to their defense against the
Neighbors= claims.

 

 








III. 
Standards of Review

We independently evaluate the trial
court=s conclusions of law and will uphold
them if the trial court=s judgment can be sustained on any theory supported by the
evidence.  See Marsh v. Marsh, 949 S.W.2d 734, 739 (Tex. App.CHouston [14th Dist.] 1997, no writ). 
The trial court=s findings of fact, however, are not conclusive when there is
a complete statement of facts in the record.  Middleton v. Kawasaki Steel
Corp., 687 S.W.2d 42, 44 (Tex. App.CHouston [14th Dist.] 1985), writ
ref=d n.r.e., 699 S.W.2d 199 (Tex. 1985) (per curiam).  Nevertheless, unchallenged
findings of fact are binding on an appellate court unless the contrary is
established as a matter of law, or if there is no evidence to support the
finding.  McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986).  We
review challenged findings for legal and factual sufficiency of the evidence,
applying the same standards we use when reviewing the evidence supporting a
jury=s answer.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  In reviewing the evidence for legal
sufficiency, we consider the evidence in the light most favorable to the
challenged finding and indulge every reasonable inference that would support
it.  City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We
credit all favorable evidence that a reasonable factfinder could and disregard
unfavorable evidence unless a reasonable factfinder could not.  See id.
at 827.  If there is more than a mere scintilla of evidence supporting a
finding of fact, we will overrule a legal sufficiency challenge.  Formosa
Plastics Corp. USA v. Presidio Eng=rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  If
no evidence supporting the judgment remains after this review, reversal is
required as a matter of law. 








In reviewing the factual sufficiency
of the evidence, we consider all of the evidence and set aside a finding only
if it is so against the great weight and preponderance of the evidence as to be
clearly wrong and unjust.  Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996).  Inferences may support a judgment only if they are reasonable in light
of all of the evidence.  Id.  The trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given to their testimony.  GTE
Mobilnet of S. Tex. Ltd. P=ship v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  In reviewing the sufficiency of the evidence, we may not substitute
our own judgment for that of the trier of fact, even if we would reach a
different answer on the evidence.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 407 (Tex. 1998).  

We review a permanent injunction for
clear abuse of discretion.  Jim Rutherford Invs., Inc. v. Terramar Beach
Cmty. Ass=n, 25 S.W.3d 845, 848 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  A movant seeking an injunction to enforce a restrictive covenant is Anot required to show proof of
irreparable injury.@  Id. at 849 (citing Munson v. Milton, 948
S.W.2d 813, 815 (Tex. App.CSan Antonio 1997, pet. denied)).  To enjoin the performance
of an act that would breach a restrictive covenant, the movant is only required
to prove that the respondent Aintends to do an act that would breach the restrictive
covenant.@  Id.  We review a trial court=s interpretation of the law de novo.  In
re Dep=t of Family & Protective Servs.,  273 S.W.3d 637, 642 (Tex. 2009). 
A trial court has no discretion in determining what the law is or properly
applying the law.  Id.  If the trial court fails to properly interpret
the law or applies the law incorrectly, it abuses its discretion.  Id.
at 642B43.

IV. 
Analysis

A.  The Property Code and Community
Homes Act 

We begin our analysis with chapter
202 of the Texas Property Code.  Section 202.002, which pertains to enforcement
of restrictive covenants, provides as follows:

(a)       This chapter applies to all restrictive
covenants regardless of the date on which they were created.

(b)       This
chapter does not affect the requirements of the Community Homes for Disabled
Persons Location Act (Article 1011n, Vernon's Texas Civil Statutes).

Tex. Prop.
Code Ann. ' 202.002 (Vernon 2007).

Section 202.003(b) further provides:








In this subsection, Afamily home@ is a residential home that meets the definition of
and requirements applicable to a family home under the Community Homes for Disabled
Persons Location Act (Article 1011n, Vernon=s
Texas Civil Statutes).  A dedicatory instrument or restrictive covenant may
not be construed to prevent the use of property as a family home.  However,
any restrictive covenant that applies to property used as a family home shall
be liberally construed to give effect to its purposes and intent except to the
extent that the construction would restrict the use as a family home.  

 

Id. ' 202.003
(footnote omitted) (emphasis added). 

 

We must compare these provisions with
the Community Homes Act, which provides in relevant part: 

(a)       The use and operation of a community home
that meets the qualifications imposed under this chapter is a use by right that
is authorized in any district zoned as residential.

(b)       A
restriction, reservation, exception, or other provision in an instrument
created or amended on or after September 1, 1985, that relates to the transfer,
sale, lease, or use of property may not prohibit the use of the property as a
community home.

Tex. Hum. Res. Code Ann. ' 123.003
(Vernon 2001). 

 

B.        Reconciliation
of the Statutes      

We now determine which statute
controls the enforcement of the instant restrictive covenant: the Property Code
provision providing for universal coverage or the Human Resources Code
provision that controls only those covenants created or amended on or after
September 1, 1985.  See Tex.
Prop. Code Ann. '' 202.00B.002; Tex. Hum. Res.
Code Ann. ' 123.003.  Chapter 202 of the Texas Property Code generally
controls the enforcement of restrictive covenants.  See Tex. Prop. Code Ann. ' 202.002(a).  However, chapter
202 yields to the Community Homes Act.  See id. ' 202.002(b) (AThis chapter does not affect the
requirements of the Community Homes for Disabled Persons Location Act . . . .@).  








The Community Homes Act limits the
enforceability of public and private regulations preventing the use of property
as a community home.  See Tex.
Hum. Res. Code Ann. ' 123.003.  Section 123.003(a) applies to city zoning
regulations while section 123.003(b) applies to private regulations such as
restrictive covenants.  See id. '' 123.003(a), (b).  More specifically,
section 123.003(a) allows property Azoned as residential@ to be used as a community home. 
This right to use residentially-zoned property as a community home is a
limitation on city zoning regulations and enforcement thereof.  Because section
123.003(a) applies only to zoning regulations restricting the use of property
as a community home and the Neighbors seek to enforce a private restrictive
covenant, section 123.003(a) is not applicable to this case.

By contrast, section 123.003(b)
limits the enforceability of private covenants.  Looking forward at the time of
its effective date, section 123.003(b) provides that as of September 1, 1985,
private covenants restricting the use of property as a community home are not
enforceable.  The instant restrictive covenant, adopted in 1965, would appear
to avoid the restrictions of section 123.003(b) absent contrary controlling
authority such as section 202.003(b) of the Texas Property Code.  We must
therefore reconcile the conflicting language of these two statutes.








Section 202.003(b) of the Property
Code provides that A[a] dedicatory instrument or restrictive covenant may not be
construed to prevent the use of property as a family home.@[1]  Tex.
Prop. Code Ann. ' 202.003(b).  The tension between section 202.003(b) of the
Texas Property Code and section 123.003(b) of the Human Resources Code is readily
apparent with respect to enforceability of a restrictive covenant depending on
the date in which the covenant was created.  The Human Resources Code bars
enforcement of a covenant restricting the use of property as a community home
created after September 1, 1985, while the Property Code bars enforcement of
the same covenant regardless of the date in which the instrument was created. 
Because section 202.003(b) is the later statute, enacted in 1987, its general
prohibition controls the less restrictive section of 123.003(b) passed in
1985.  We conclude that the universal applicability of the Property Code=s section 202.003(b) controls if the
use of property comports with definition of a community home articulated in the
Human Resources Code.  Applying section 202.003(b), we further conclude that
the disputed restrictive covenant is enforceable to the extent that the Meehls
have met the qualifications further articulated under the Human Resources Code.[2]








C.        Requirements of the Community Homes Act

We now consider whether the Meehls= use of their property meets the
requirements of a community home under the Community Homes Act.  These
requirements are set forth in the Community Homes Act as follows: 

To qualify as a community home, an entity must comply
with Sections 123.005 through 123.008 [of the Texas Human Resource Code] and
be:

(1)       a community‑based residential home
operated by:

(A)      the Texas Department of Mental Health and
Mental Retardation;

(B)      a community center organized under Subchapter
A, Chapter 534, Health and Safety Code, that provides services to persons with
disabilities;

8          an entity subject to the Texas Non‑Profit
Corporation Act (Article 1396‑1.01 et seq., Vernon=s Texas Civil Statutes); or

(D)      an entity certified by the Texas Department
of Human Services as a provider under the medical assistance program serving
persons in intermediate care facilities for persons with mental retardation; or

(2)       an
assisted living facility licensed under Chapter 247, Health and Safety Code,
provided that the exterior structure retains compatibility with the surrounding
residential dwellings.








Tex. Hum.
Res. Code Ann. ' 123.004.  Although there is no
evidence that Mark and Debra Meehl fulfill these requirements, it is undisputed
that the Foundation is an entity subject to the Texas Non‑Profit
Corporation Act.  Thus, the Foundation is eligible to operate a community home,
provided that other statutory requirements are satisfied.  These include the
requirement that a community home provide food and shelter, personal guidance,
care, habilitation services, and supervision.  Id. ' 123.005.  The Meehls offered
uncontroverted evidence that these services would be provided in the planned
facility.[3]  In addition,
no more than six persons with disabilities and two supervisors may reside in a
community home at the same time.  Id. ' 123.006.  Again, the Meehls= testimony regarding their planned
operations was not rebutted by any evidence that operation of a community home
at the Meehls= property would violate this statute.  Finally, the Meehls offered
evidence, without contradiction, that there is no existing community home
within a half-mile of the Meehls= property.  Id. ' 123.008 (AA community home may not be
established within one‑half mile of an existing community home.@). 








Rather than rebutting the Meehls= evidence, the Neighbors instead
focused their arguments on section 123.007 of the Human Resources Code, which
provides simply that A[a] community home must meet all applicable licensing
requirements.@  Id. ' 123.007.  Although they argue that ATexas does not authorize or protect >unlicensed= community homes,@ neither at trial nor on appeal have
they identified any unsatisfied licensing requirement applicable to the
Foundation=s operation of a community home.  Indeed, in a letter brief to the trial
court, the Neighbors asserted both that Ait is obvious the legislature did not
provide for unlicensed >community homes=@ and A[i]t is obvious . . . that no one
knows what those applicable licensing requirements are.@  At oral argument, the Neighbors
identified no applicable licensing requirements.  Although they referred to
language that they contend appears in AChapter 254@ of the Health and Safety Code, no
such section exists.  Appellees produced a document containing the language on
which they rely and represented that the language had been enacted into law; in
fact, the document produced is merely a copy of House Bill 1168 as introduced
to the Texas Legislature in February 2007 by Representative Jose Menendez.  A
bill is not law; here, the provisions that would have added a chapter to the
Health and Safety Code were deleted from the proposed legislation before its
enactment. 

Because the trial court failed to
correctly identify and apply the controlling law, its issuance of a permanent
injunction constitutes an abuse of discretion.  Contrary to the trial court=s analysis, the deed restriction must
yield to the Foundation=s right to operate a community home in accordance with the
Community Homes Act.  We therefore sustain appellants= second, third, fourth, eighth, and
ninth issues; dissolve the permanent injunction; and reverse the trial court=s judgment.  

D.        Standing to Assert Fair
Housing Act Claims 

In their fifth issue, appellants ask Awhether the court erred as a matter
of law when it concluded that the Meehls were not [in] a protected class within
the meaning of the Federal Fair Housing Act@ (Athe FHA@).  Appellants presented
uncontroverted evidence that Mark Meehl has a history of bipolar illness which
prevents him from working; thus, he has a Ahandicap@ as defined by the FHA.  See 42
U.S.C.A. ' 3602(h) (defining Ahandicap@ to include a physical or mental impairment which
substantially limits one or more of the person=s major life activities, a record of
having such an impairment, or being regarded as having such an impairment). We
therefore sustain appellants= fifth issue as it pertains to Mark Meehl.  Regarding Debra
Meehl and the Foundation, however, appellants presented no evidence that they
are handicapped as that term is used in the FHA, and appellants have identified
no other protected class to which Debra Meehl and the Foundation allegedly
belong.  Thus, we overrule appellants= fifth issue as it applies to Debra
Meehl and the Foundation.








The balance of appellants= argument is less than clear. 
According to appellants, Athe essential issue that the court=s finding appears to raise is whether
the Meehls have standing under the FHA to challenge [the Neighbors=] discriminatory actions.@  But membership in a protected class
is not a prerequisite for standing to assert a claim under the Fair Housing
Act. Moreover, the trial court did not rule that any appellant lacked standing
to assert such a claim.[4]  We overrule
appellants= fifth issue as it applies to Debra Meehl and the Foundation.

E.  Merits of Fair
Housing Act Claims

In their sixth and seventh issues,
appellants challenge the trial court=s finding that they failed to show
that a federal Fair Housing Act (AFHA@) discrimination had occurred or
would occur as a result of the enforcement of the deed restriction.  In support
of this argument, appellants rely on sections 3604(f)(1), (2), and (3)(B) of
the FHA, which make it unlawful:

(1)       To discriminate in the sale or rental, or to
otherwise make unavailable or deny, a dwelling to any buyer or renter because
of a handicap of‑‑

(A)      that buyer or renter, 

(B)      a person residing in or intending to reside
in that dwelling after it is so sold, rented, or made available; or

(C)      any person associated with that buyer or renter.

(2)       To discriminate against any person in the
terms, conditions, or privileges of sale or rental of a dwelling, or in the
provision of services or facilities in connection with such dwelling, because
of a handicap of‑‑

(A)      that person; or

(B)      a person residing in or intending to reside
in that dwelling after it is so sold, rented, or made available; or

(C)      any person associated with that person.

(3)       For purposes of this subsection,
discrimination includes‑‑

. . .

(B)      a
refusal to make reasonable accommodations in rules, policies, practices, or
services, when such accommodations may be necessary to afford such person equal
opportunity to use and enjoy a dwelling . . . .








42 U.S.C.A. ''  3604(f)(1), (2), &
(3)(B).  We note that these provisions do not apply to Arooms or units in dwellings
containing living quarters occupied or intended to be occupied by no more than
four families living independently of each other, if the owner actually
maintains and occupies one of such living quarters as his residence.@  Id. ' 3603(b)(2).  A>Family= includes a single individual.@  42 U.S.C.A. ' 3602(c).  Here, it is
undisputed that the Meehls= house is a single-family residence in which the Meehls
reside, and that it is occupied or intended to be occupied by no more than four
families living independently from one another.  Thus, section 3604(f) does not
apply to the Meehls= residence.

Although appellants cite no other
provision of the FHA, they also rely on cases that apply section 3617, which
provides:

It shall be unlawful to coerce,
intimidate, threaten, or interfere with any person in the exercise or enjoyment
of, or on account of his having exercised or enjoyed, or on account of his
having aided or encouraged any other person in the exercise or enjoyment of,
any right granted or protected by section 3603, 3604, 3605, or 3606 of this
title.

42 U.S.C.A. ' 3617; see, e.g., United
States v. Wagner, 940 F.Supp. 972 (N.D. Tex. 1996); Deep E. Tex. Reg=l. Mental Health & Mental Retardation
Servs. v. Kinnear,
87 S.W.2d 550 (Tex. App.CBeaumont 1994), rev=d in part on other grounds by Kinnear v. Tex. Comm=n on Human Rights ex rel. Hale, 14 S.W.3d 299 (Tex. 2000) (per
curiam).  However, appellants provide no argument and cite no evidence
indicating that the Neighbors have engaged in any prohibited conduct in
connection with the exercise or enjoyment, by appellants or their prospective
clients, of rights granted or protected by any of the four specified provisions
of the FHA.

Section 3603(b)(2) exempts resident
homeowners from the protections of all provisions of section 3604 with the
exception of subsection (c).  42 U.S.C.A. ' 3603(b)(2). Pursuant to
subsection 3604(c), it is unlawful: 

To make, print, or publish, or cause
to be made, printed, or published any notice, statement, or advertisement, with
respect to the sale or rental of a dwelling that indicates any preference,
limitation, or discrimination based on race, color, religion, sex, handicap,
familial status, or national origin, or an intention to make any such
preference, limitation, or discrimination.








42 U.S.C.A. ' 3604(c).  Appellants, however,
do not contend that the Neighbors caused any such statement to be made,
printed, or published.  Section 3605 applies to discrimination by those whose
business includes residential real estate-related transactions (such as making
or purchasing loans, selling, brokering, or appraising residential real
property), and section 3606 applies to discrimination in the provision of
brokerage services.  42 U.S.C.A. '' 3605, 3606.  Appellants do not
argue that these provisions apply to them.

Because appellants have failed to
show that the Neighbors violated any applicable FHA provision, we overrule
appellants= sixth and seventh issues.

F.        Requests
for Affirmative Relief

In their first and tenth issues,
appellants challenge the trial court=s denial of their requests for declaratory
judgment and its refusal to permanently enjoin the Neighbors from attempting to
enforce the deed=s restrictive covenant to bar their operation of a community
home.  We review the grant or denial of declaratory judgment under the same
standard that applies to other judgments.  Tex.
Civ. Prac. & Rem. Code Ann. ' 37.010 (Vernon 2008).  Although the
trial court may refuse to render declaratory judgment if doing so would not
terminate the uncertainty or controversy giving rise to the proceeding, id.
' 37.008, that is not the case
here.  Inasmuch as appellants established as a matter of law that the
restrictive covenant affecting the Meehls= residence does not bar the
Foundation=s operation of the planned community home, they have shown themselves
entitled to a declaratory judgment to that effect.  








The grant or refusal of a permanent
or temporary injunction is ordinarily within the trial court=s sound discretion, and on appeal,
review of the trial court=s action is limited to the question of whether the action
constituted a clear abuse of discretion.  Jim Rutherford Invs., Inc., 25
S.W.3d at 848.  Here, the trial court=s denial of the requested injunctive
relief was based on the erroneous conclusions that the restrictive covenant is
enforceable and the Community Homes Act does not apply.  To enable the trial
court to exercise its discretion in determining whether, under the correct law,
injunctive relief is warranted, we sustain appellants= first and tenth issues in part and
remand the case for consideration of injunctive relief.  In light of our
disposition of the appellants= first ten issues, appellants= eleventh issue is moot. 

IV. 
Conclusion

Because the trial court=s rulings enforce a restrictive
covenant in violation of the Community Homes Act, we dissolve the permanent
injunction, reverse the trial court=s judgment, and remand the case to
allow the trial court to consider whether the injunctive relief against the
Neighbors is warranted.      

 

 

 

 

/s/        Adele Hedges

Chief Justice

 

 

 

Panel
consists of Chief Justice Hedges and Justices Guzman and Brown. (Guzman, J.
concurring.)

 









[1]  Under section 123.003(b), a restrictive covenant
cannot prevent the use of property as a family home.  Although
the Meehls seek to use their property as a community home, family
home and community home are one in the same.  When section 123.003(b) was
enacted in 1987, the Community Homes Act defined a Afamily home@ as
follows:

AFamily home@
means a community-based residential home operated by:

(A)       the department;

(B)        a community center organized under Section
3.01, Texas Mental Health and Mental Retardation Act (Article 5547-203, Vernon=s Texas Civil Statutes), which provides services to
disabled persons; 

8          a nonprofit corporation; or

(D)       an entity certified by the Texas Department
of Human Resources as a provider under the intermediate care facilities for the
mentally retarded program.

Act of May
15, 1985, 69th Leg., R.S., ch. 303, '' 4,5,
1985 Tex. Gen. Laws 1355, 1356.  Curiously, such homes were referred to as Acommunity homes@ in
the title of Act and as Afamily homes@ in
the body of Act.  When the Act was recodified in 1991, this inconsistency was
corrected, and the term Acommunity home@
replaced Afamily home@ in
the body of the Act.  Compare id. with Tex.
Human Res. Code Ann. ' 123.004(1). 
Thus, the Afamily home@ of
1987 is the Acommunity home@ of
today; the definition of both terms includes Aa community-based residential home@
operated by one of four entities or types of entities. 





[2]  In its findings of fact and conclusions of law, the
trial court erroneously concluded that the Community Homes Act Awas enacted in 1991, four (4) years after section
202.002(a) of the Texas Property Code.@ 
The trial court then found that section 202.002 of the Property Code is
irreconcilable with section 123.003 of the Human Resources Code because section
123.003 prevents owners from including a provision barring the use of property
as a community home Aon or after September 1, 1985,@ whereas section 202.002(b) prohibits enforcement of
such covenants of any date.  Relying on the Code Construction Act, the trial
court concluded that the Community Homes Act Aprevails@ because it was enacted after the Property Code
provision.  See Tex. Gov=t
Code Ann. ''  311.025(a), 311.031(d) (Vernon 2005). Noting that section
123.003(b) of the Community Homes Act does not address restrictive covenants
created before September 1, 1985, the trial court reasoned that restrictive
covenants created before that date are enforceable and further concluded that
section 202.002(a) of the Property Code does not apply because it was not
enacted until 1987.  Thus, the trial court held that because the restrictive covenant
in this case was created in 1965, it was enforceable to bar the use of the
Meehls= property as a community home.

We disagree with the trial court=s
reasoning in at least three respects.  First, it is based on a false premise.
The Community Homes Act is the earlier statute; it was originally enacted in
1985 as Article 1011n of Vernon=s Texas Civil
Statutes and was simply recodified in 1991.  See Act of May 15, 1985,
69th Leg., R.S., ch. 303, '' 4, 5, 1985 Tex. Gen. Laws 1355,
1356, eff. September 1, 1985, repealed by Act of March 25, 1991, 72nd
Leg., R.S., ch. 16, ' 12.01(b), 1991 Tex. Gen. Laws 244, 336, eff.
Aug. 26, 1991 (AChapter 303, Acts of the 69th Legislature, Regular
Session, 1985 (Article 1011n, Vernon=s
Texas Civil Statutes), is repealed.@) and
recodified by Act of March 25, 1991, 72nd Leg., R.S., ch. 16, ' 12.01(a), 1991 Tex. Gen. Laws 244, 336, eff.
Aug. 26, 1991.  The recodifiying Act (S.B. No. 232) was intended to effect Anonsubstantive additions to and correction in enacted
codes.@  Act of March 25, 1991, 72nd Leg., R.S., ch. 16, ' 1.01, 1991 Tex. Gen. Law 244, 244B45.  In contrast, section 202.002  chapter 202 of the
Texas Property Code was enacted in 1987, two years after the Community Homes
Act.  Second, section 202.002 of the Property Code does not conflict with
section 123.003 of the Human Resources Code, because the former expressly
states that it Adoes not affect the requirements of the Community
Homes for Disabled Persons Location Act,@
which had already been enacted. Both the legislative history and the plain text
of the two provisions unambiguously require restrictive covenants to yield to
the Community Homes Act.  Third, the trial court failed to consider Property
Code section 202.003(b), which governs a court=s construction of a restrictive covenant that prevents the use of
property as a family or community home.  See Tex. Prop. Code Ann. '
202.003(b).





[3]  Debra Meehl testified that she and her husband,
acting through the Foundation, planned to rent three suites in their home for
periods of six to twelve months to persons with bipolar disorder who had been
released from hospitalization but were not yet ready to rejoin their families. 
The Foundation would provide food, shelter, and supervision of the residents;
assist them in improving their ability to perform life skills such as keeping
appointments with doctors and managing money; provide opportunities for
therapeutic activities such as gardening; and facilitate their reentry into
life with their families.  Debra explained that the Foundation would also host Afamily weekends,@
during which residents= family members would be allowed more extended
visits.  





[4]  See id. ''
3602(d) (defining Aperson@ to include Acorporations, partnerships, associations, labor
organizations, legal representatives, mutual companies, joint‑stock
companies, trusts, unincorporated organizations, trustees, trustees in cases
under Title 11, receivers, and fiduciaries@);
3602(i) (defining an Aaggrieved person@ as
one who allegedly has been or will be injured by a discriminatory housing
practice); 3613(a)(1)(A) (permitting an aggrieved person to file a civil
action).