**AFFIRM; and Opinion Filed August 26, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00278-CV

**FRANK RONALD CLARK AND JACQUELINE D. MARTIN, Appellants**
**V.**
**ALFRED LITCHENBURG, KELLI LITCHENBURG,**
**PAUL SIMON, AND LARRY JEAN LINDEN, Appellees**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-00983-2016**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Brown

This appeal involves a dispute between the owners of three homes in a gated community comprised solely of those three residences. A jury heard appellants' claims for trespass and promissory estoppel and returned a verdict in their favor. The trial court later held a bench trial on the parties' remaining claims. In three issues, appellants challenge that portion of the court's final order that enforces restrictive covenants in favor of appellees. Their primary complaint is that the trial court erred by denying their request for a jury trial on all claims. They also assert the court's final order is "legally and factually deficient" for various reasons. We affirm.

### BACKGROUND

The three properties are located in Fairview, Texas. They have a common, gated driveway off of Stacy Road. Appellee Paul Simon owns the property closest to the entrance, 831 Stacy, and

his mother-in-law Larry Jean Linden lives there. Appellants Frank Ronald Clark and Jacqueline D. Martin own 833 Stacy, the middle property, and appellees Alfred and Kelli Litchenburg own 835 Stacy, which is the farthest from Stacy Road. The Litchenburgs have to pass both the Simon/Linden property and the Clark/Martin property on the common driveway to get to their house.

The three lots were initially one 7.65 acre tract owned by a builder. In early 1995, that owner established restrictive covenants, binding on all future owners, to "enhance and protect the lifestyle, the atmosphere, and investment appreciation for all those who will invest in the addition." The covenants provided for certain common areas—the private driveway that serves as access to the lots, the landscaping and irrigation between the "Stacy Rd. wall and curb," and the entry area landscaping berm, irrigation, walls, lights, and security gate. The covenants also established an Architectural Control Committee (ACC) and require written approval from the ACC for "any and all construction and improvements made to the property." In addition, covenant 4(B) specifically requires ACC approval for all buildings, fences, wall, terraces or other structures, and covenant 5(F) provides, "In all cases, fences must have specific approval from the ACC prior to construction."

Section 15 of the restrictive covenants is titled "Homeowner Association." Under that section, the ACC retained power until the last lot in the addition was sold. Upon the sale of the last lot, the ACC's duties automatically transferred to the purchasers and the ACC was to "be designated the Homeowners' Association." The Homeowners' Association (HOA) is empowered with the same duties and obligations as the ACC. Section 15 also requires the homeowners to make specific monetary contributions for beautification and maintenance of the front entry and common grounds.

In addition, section 17 authorizes recovery of attorney's fees in an action to enforce the restrictive covenants:

> If the owner, ACC, purchaser(s)/homeowner(s), or the Association hereinafter established, attempts to enforce any violation of these restrictive covenants by way of a legal action or any other type of enforcement procedure, then the purchaser/homeowner found in violation of any of these restrictive covenants shall pay to the party or parties enforcing these covenants all necessary and reasonable attorney's fees.

Simon purchased 831 Stacy in 2001, Clark and Martin purchased 833 Stacy in 2002, and the Litchenburgs purchased 835 Stacy in 2011. It is undisputed that the covenants were specifically referenced in the parties' deeds.

In March 2016, appellees—the Litchenburgs and Simon and Linden—sued Clark and Martin, owners of the property in between them. Their petition was titled "Plaintiffs' Original Petition for Tortious Interference with Use of Real Property." Appellees alleged Clark and Martin had interfered with their use of property in several ways. The most significant allegation was that Clark and Martin had attempted to put up a fence and gate across the access easement that provided the only access to the Litchenburgs' property. Appellees alleged that installation of any gate or fence on the property was in violation of the restrictive covenants. They sought damages from Clark and Martin for their tortious interference. In addition, they sought a temporary restraining order as well as a permanent injunction prohibiting Clark and Martin from installing any gates, fences, or any other structure that would be in violation of the restrictive covenants.

Simon also alleged that when he purchased 831 Stacy, some of the septic system pipes were on the 833 Stacy property. He sought an easement along the property line shared with Clark and Martin for use of a septic line, as well as adjacent trees and landscaping. Alternatively, he sought title to that portion of the land through adverse possession.

Clark and Martin answered with a general denial and several affirmative defenses, including waiver and ratification. They also asserted four counterclaims. First, they brought an

–3–

action for quiet title in which they asserted Simon had alleged ownership in their property and had not acquired any right to possession. Second, they sought a declaratory judgment that: (1) the restrictive covenants were void and unenforceable; (2) they have a right to place a gate on their property across the "access easement such that the Litchenburgs will have ingress/egress access through the gate but no right to keep the gate open for longer than two consecutive minutes except in cases of emergency or with [Clark and Martin's] written permission"; and (3) Simon wrongly kept all proceeds paid as a result of a government taking on Stacy Road. Third, they pleaded a claim for promissory estoppel in which they alleged Simon and Linden owed them for expenses related to maintenance of the entry area and gate. Finally, Clark and Martin alleged the Litchenburgs had trespassed on their property by placing their trash can out for pick up on it.

On May 31, 2016, appellees filed a separate application for temporary restraining order, temporary injunction, and permanent injunction. They alleged that despite their lawsuit, on May 28, Clark and Martin had begun installing a fence and gate between their property and the Litchenburgs'. Appellees attached pictures of the work being done. Appellees alleged the nature of their lawsuit was to enforce restrictive covenants and enjoin Clark and Martin from installing a fence and gate. The trial court granted a temporary restraining order prohibiting Clark and Martin from installing a gate and later a temporary injunction prohibiting them from violating any restrictive covenants, including erecting any gate or fence.

A "1st Amended Plaintiffs' Original Petition for Tortious Interference with Use of Real Property" was filed on September 1, 2016. Simon and Linden were no longer named as plaintiffs, only the Litchenburgs were. Thus, there was no longer any claim by Simon for an easement or adverse possession. The Litchenburgs' claim for tortious interference was based only on Clark and Martin's attempt to put a fence and gate across the right of way to access their property. They also reiterated their request for a permanent injunction prohibiting Clark and Martin "from

–4–

installing any gates, fences or any other structure on any of the property that would be in violation of the restrictive covenants."

The case was eventually set for a January 20, 2017 jury trial. In December 2016, Clark and Martin requested a jury trial and paid the jury fee. On the day of trial, the Litchenburgs filed a motion in limine asking the trial court to instruct Clark and Martin not to mention the restrictive covenants to the jury. They argued the validity of the restrictive covenants was for the court to decide as a matter of law. Clark and Martin responded there were fact issues related to the restrictive covenants for the jury to decide, namely on the issue of waiver. They argued appellees had waived the right to enforce the restrictive covenants because they had acquiesced to other violations in the neighborhood. When the judge asked if there were any other fact issues, Clark and Martin mentioned the reasonableness of the proposed violation, the elements of tortious interference, and the issue of quiet title. Appellees told the judge they were not seeking economic damages, only the enforcement of the restrictive covenants. Their position was that there were no fact questions for the jury regarding their enforcement. They argued Clark and Martin's quiet title claim went away when they nonsuited a cause of action, apparently referring to Simon's claim for an easement.

Clark and Martin also argued there was no HOA. The judge rejected that argument, referencing HOA bills. The judge stated, "[M]any of the things that you're saying the jury would have to determine, the Court is of the opinion that is a question of law, not a question of fact." The judge ruled the restrictive covenants could not be mentioned during voir dire and limited the jury trial to Clark and Martin's claims for promissory estoppel and trespass.

The parties proceeded to jury trial with the understanding that all issues regarding the restrictive covenants would later be determined by the judge. The jury found in favor of Clark and Martin on their promissory estoppel claim and found that Clark and Martin's damages were $1133.

–5–

The jury further found that Alfred Litchenburg "physically, intentionally, and voluntarily enter[ed] land solely owned by" Clark and Martin, but awarded zero damages for trespass.

One month later, the parties appeared before the trial court for a bench trial. The judge heard testimony from several witnesses, including Clark, Martin, and Alfred Litchenburg. The judge ruled orally that the restrictive covenants had not been waived and that they prohibit Clark and Martin from erecting the gate. The court awarded attorney's fees to appellees pursuant to section 17 of the restrictive covenants.

Almost a year later, the court signed a final order. The court awarded Clark and Martin $1378 against Linden and denied all other relief sought by Clark and Martin.[1] The court ordered that the restrictive covenants are valid and enforceable. It ordered that Clark and Martin are prohibited from erecting a gate across the common access drive that the Litchenburgs would have to pass through to access their property. The court further ordered that no gate may be erected by any of the owners on any lot or across the common access drive that another owner would have to pass through to access his property, with the exception of the common front security gate. Clark and Martin were ordered to remove, within 30 days, the fence, all concrete foundations, and every other structure they erected after the original petition was filed. The order also recites that when the last of the lots was sold the ACC was converted into an HOA and states, "The existence of the HOA and its legitimacy is further established by this Judgment and shall continue to exist until further order of this court." The judgment awards appellees attorney's fees in the amount of $28,379 against Clark and Martin, plus conditional fees in the event of an appeal. The order does not mention the tortious interference cause of action.

---

[1] It is unclear why $1378 was awarded when the jury determined Clark and Martin's damages were $1133. No one complains of this discrepancy.

**COMPLAINTS REGARDING DENIAL OF JURY TRIAL**

In their first issue, Clark and Martin contend the trial court erred by refusing to conduct a jury trial on all claims. They assert they were entitled to a jury trial on: (1) appellees' claim for tortious interference, (2) appellees' request for a permanent injunction, (3) appellees' request for attorney's fees, (4) their own affirmative defenses to tortious interference and permanent injunction, (5) their declaratory judgment counterclaim, and (6) their counterclaim for quiet title.

The denial of a jury trial is harmful if the case contains material fact questions. *Panda Sherman Power, LLC v. Grayson Central Appraisal Dist.*, No. 05-17-00267-CV, 2018 WL 3737974, at *4 (Tex. App.—Dallas Aug. 7, 2018, no pet.) (mem. op.) (citing *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). We conclude, for reasons that follow, there were no material fact questions that were not submitted to the jury.

Resolution of this issue turns on interpretation of the restrictive covenants. We review the trial court's interpretation of a restrictive covenant de novo. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 279 (Tex. 2018). Restrictive covenants are subject to the general rules of contract construction. *Id.* at 280 (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). A paramount concern when construing covenants is giving effect to the objective intent of the drafters of the covenant as it is reflected in the language chosen. *Id.* When a restrictive covenant is unambiguous, we construe it according to the plain meaning of its express wording and enforce it as written. *Vance v. Popkowski*, 534 S.W.3d 474, 478 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). None of the parties argue the covenants are ambiguous. Nor do we find any ambiguity. Review of an unambiguous restrictive covenant is a question of law. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 73 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

We address Clark and Martin's contentions regarding denial of a jury trial on the permanent injunction, the affirmative defense of waiver, and their declaratory judgment claim together as they are related. Clark and Martin argue the elements of the claim for permanent injunction, including whether there was a wrongful act, were for a jury to decide. Clark and Martin sought to have the covenants declared void and unenforceable because they were waived "by decades of violations and no enforcement." They maintain that waiver was a fact intensive inquiry.

Ordinarily, to obtain injunctive relief, a party must show a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law. *Flume v. Bassett*, No. 04-10-00876-CV, 2011 WL 4090199, at *3 (Tex. App.—San Antonio Sept. 14, 2011, no pet.) (mem. op.); *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). To enjoin the violation of restrictive covenants, however, demonstrable intent to breach a restrictive covenant will support an injunction without any showing of irreparable injury or imminent harm. *Bankler v. Vale*, 75 S.W.3d 29, 39 (Tex. App.—San Antonio 2001, no pet.); *Jim Rutherford*, 25 S.W.3d at 849.

The restrictive covenants required written approval from the HOA—i.e., the other owners in the small community—for "any and all construction and improvements made to the property," including fences and other structures. It is undisputed that Clark and Martin did not seek or obtain HOA approval of their plans for a fence and gate. Under the plain language of the restrictive covenants, they were prohibited from erecting a fence and gate on their property. We turn to Clark and Martin's argument that appellees waived the right to enforce these provisions.

Waiver is the voluntary relinquishment of a known right. *Jim Rutherford*, 25 S.W.3d at 851. Restrictive covenants may be waived, and waiver is ordinarily a question of fact. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996); *Nolan v. Hunter*, No. 04-13-00072-CV, 2013 WL 5431050, at *5 (Tex. App.—San Antonio Sept. 25, 2013, no pet.) (mem.

–8–

op.). Where the facts and circumstances are admitted or clearly established, however, the question becomes one of law. *Tenneco*, 925 S.W.2d at 643. To establish waiver in a deed restrictions case, the nonconforming user must prove that violations then existing are so great as to lead the mind of the "average man" to reasonably conclude that the restriction in question has been abandoned and its enforcement waived. *Hicks v. Loveless*, 714 S.W.2d 30, 35 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Among the factors to be considered are the number, nature, and severity of the then existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Id.*

An analysis involving any prior violations is immaterial in this case because the restrictive covenants contain a nonwaiver provision. Section 1(D) provides, "Invalidation of any of these covenants by judgement or court order, or the failure to enforce any of the said restrictions at the time of its violation shall in no way affect any of the other restrictions which shall remain in full force and affect [sic]." The purpose of such a provision is to prevent claims of waiver and abandonment of restrictive covenants. *Vance*, 534 S.W.3d at 479. A nonwaiver clause will be held to be ineffective only if the party seeking to avoid the covenants can demonstrate a "complete abandonment of the entire set of restrictions, including the nonwaiver provision." *Sides v. Saliga*, No. 03-17-00732-CV, 2019 WL 2529551, at *14 (Tex. App.—Austin June 20, 2019, no pet. h.) (mem. op.) (quoting *Vance*, 534 S.W.3d at 479–80); *Musgrove v. Westridge St. Partners I, LLC*, No. 2-07-281-CV, 2009 WL 976010, at *4 (Tex. App.—Fort Worth Apr. 9, 2009, pet. denied) (mem. op.). Complete abandonment is demonstrated when there is evidence of violations so pervasive that they have destroyed the fundamental character of the neighborhood. *Sides*, 2019 WL 2529551, at *14. Clark and Martin do not mention the nonwaiver provision in their opening appellate brief, let alone contend the nonwaiver provision had been waived or that the fundamental

character of the neighborhood has been destroyed.[2] We conclude the nonwaiver provision precluded Clark and Martin's defense of waiver as a matter of law. There was nothing to submit to the jury regarding waiver.[3]

In addition, Clark and Martin contend the elements of their quiet title claim were for the jury to decide. In two sentences in their brief, they set out the elements of a claim for quiet title and argue that such a claim centers on the validity of the restrictive covenants and implicates "the same fact determinations on waiver, ratification, and intent." *See Vernon v. Perrien*, 390 S.W.3d 47, 62 (Tex. App.—El Paso 2012, pet. denied) (plaintiff in quiet title action must show interest in property, title to property is affected by defendant's claim, and claim is invalid or unenforceable). Assuming that Clark and Martin's cause of action to quiet title survived Simon's nonsuit of his easement and adverse possession claims, our resolution of Clark and Martin's previous arguments about enforceability and waiver of the restrictive covenants also resolve this issue. They have not made any new argument unique to a cause of action to quiet title.

Next, Clark and Martin contend a jury should have determined if the elements of the Litchenburgs' claim for tortious interference existed. The elements of such a cause of action are: an interference with one's property or property rights, which was intentional and caused damage, and which was conducted with neither just cause nor legal excuse. *Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 21, 2016, no pet.) (mem. op.). Clark and Martin cannot show any harm related to the claim for tortious interference because there is nothing to indicate the trial court granted any relief to appellees based

---

[2] While they argue in their reply brief that a jury should have considered whether the facts demonstrated a waiver of the nonwaiver provision, we do not consider issues raised for the first time in an appellant's reply brief. *St. John Missionary Baptist Church v. Flakes*, 547 S.W.3d 311, 316 (Tex. App.—Dallas 2018, pet. granted); *Powell v. Knipp*, 479 S.W.3d 394, 408 (Tex. App.—Dallas 2015, pet. denied); *see* TEX. R. APP. P. 38.3.

[3] In a single sentence in their brief, Clark and Martin argue without any explanation that appellees' ratification of Clark and Martin's actions was likewise a jury issue and cite a breach of contract case. This contention has not been adequately briefed. *See* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for the contentions made, with appropriate citations to authorities). Even so, the nonwaiver provision in the restrictive covenants precludes an argument that appellees ratified the gate and fence by acquiescing in any prior violations.

on a tortious interference theory. The court's final order does not mention tortious interference. Appellees made clear they did not seek economic damages for Clark and Martin's actions; thus, the nature of appellees' cause of action was one to enforce the restrictive covenants. Such a cause of action, although not identified in so many words, may be reasonably inferred from the specific allegations in appellees' pleadings. *See Bloom v. Swango*, No. 05-14-01237-CV, 2015 WL 5786824, at *3 (Tex. App.—Dallas Oct. 5, 2015, pet. denied) (mem. op.). In the absence of special exceptions, pleadings should be liberally construed in favor of the pleader. *Id.*

Alternatively, Clark and Martin contend the tortious interference with use of property cause of action was eliminated and that therefore the trial court properly did not allow that claim to be presented to the jury. As appellees do not complain about the outcome of the tortious interference claim, it is not necessary for us to address this argument. Even so, the case cited by Clark and Martin holds the tort of intentional interference with *inheritance* is not recognized in Texas. *See Archer v. Anderson*, 556 S.W.3d 228, 239 (Tex. 2018).

Finally, Clark and Martin contend the issue of attorney's fees should have gone to the jury because the reasonableness of a fee award is generally a fact question. We conclude Clark and Martin have not preserved their complaint about the lack of a jury trial on attorney's fees. A party is required to act affirmatively to preserve the right to complain on appeal that he was denied his perfected right to a trial by jury. *Sunwest Reliance Acquisitions Grp., Inc. v. Provident Nat'l Assurance Co.*, 875 S.W.2d 385, 387 (Tex. App.—Dallas 1993, no writ); *see Jefferson Cty. v. Nguyen,* No. 09-13-00505-CV, 2015 WL 4597560, at *25 (Tex. App.—Beaumont July 31, 2015, no pet.) (mem. op.). The right may be waived expressly or by a party's failure to act. *Sunwest*, 875 S.W.2d at 387–88. Prior to the jury trial, when the trial court was attempting to identify what factual matters should go to a jury, Clark and Martin did not mention attorney's fees. Nor did they raise any objection a month later to the bench trial on attorney's fees.

In sum, Clark and Martin have failed to demonstrate there were any material fact questions not decided by the jury. Any denial of Clark and Martin's right to a jury trial was not reversible. *See Panda*, 2018 WL 3737974, at *4. We overrule Clark and Martin's first issue.

## OMISSION OF CLAIMS FROM JURY CHARGE

In a second issue, Clark and Martin contend appellees waived their tortious interference claim and requests for a permanent injunction and attorney's fees by voluntarily omitting them from the jury charge. They cite *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 565 (Tex. 2002), for the proposition that "a party waives an entire theory of recovery or defense by not objecting to its omission from the charge." This law is inapplicable to the facts of this case. Appellees did not fail to obtain findings on their claims. Their position was that they were established as a matter of law. The trial court considered their claims and agreed. We overrule Clark and Martin's second issue.

## MISCELLANEOUS COMPLAINTS

In their third issue, Clark and Martin argue that even if this Court determines the trial court's failure to submit the entire case to the jury was not reversible error, the final judgment must still be reversed for "fatal flaws as to the underlying pleadings of Plaintiff[s], rulings contrary to Texas law, legal insufficiency, and factual insufficiency." Under this one issue, they make numerous brief legal arguments. More than once they repeat their argument that the restrictive covenants were waived by years of noncompliance. We have already rejected this complaint based on the nonwaiver provision.

### A. Findings of Fact and Conclusions of Law

Clark and Martin argue they suffered harmful error as a result of the trial court's failure to make findings of fact and conclusions of law in response to their timely request. They ask us to review the entire record, which we have, to determine if the court's implied findings are supported

–12–

by the evidence. Alternatively, they ask us to abate the case and order the trial court to make findings and conclusions.

A trial court's failure to respond to a timely request for findings of fact and conclusions of law is error and is presumed harmful unless the record before the appellate court affirmatively shows the complaining party suffered no harm. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017); *In re C.M.C.*, No. 05-15-01359-CV, 2016 WL 7166415, at *7 (Tex. App.— Dallas Nov. 9, 2016, no pet.) (mem. op.) (citing *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)). When the trial court's failure is harmful, the preferred remedy is for the appellate court to direct the trial court to file the missing findings. *Ad Villarai*, 519 S.W.3d at 135. The general rule is that an appellant has been harmed if, under the circumstances of the case, he has to guess at the reasons the trial court ruled against him. *C.M.C.*, 2016 WL 7166415, at *7. Clark and Martin have thoroughly briefed their issues on appeal and do not specify how they were harmed by the court's failure to make findings and conclusions or argue that they had to guess the reasons for the trial court's rulings. Nor has the lack of findings impacted our ability to evaluate the issues in this appeal. It is not necessary to abate this appeal for the trial court to make findings and conclusions.

## B. Declaratory Judgment

Clark and Martin next contend the trial court improperly granted a declaratory judgment for appellees regarding the validity and enforceability of the restrictive covenants and the existence of an HOA when appellees did not plead or prove these matters. *See* TEX. R. CIV. P. 301 (trial court's judgment shall conform to pleadings, nature of case proved, and verdict if any). But Clark and Martin themselves pleaded these issues. They sought a declaratory judgment that the restrictive covenants were void and unenforceable and that they had a right to put up the fence and

gate. Throughout the proceedings, they claimed the right to add these structures in part because there was no HOA from which to get permission.

Clark and Martin also argue they were entitled to declaratory judgment because there is no evidence an HOA exists. Their position is that no HOA was formed after the ACC automatically terminated. And they assert that evidence the trial court erroneously excluded confirms there is no HOA. The evidence in question is pre-suit letters from appellees' counsel to Clark in which counsel questions the existence of an HOA. Even if we assume the court erred in excluding the letters, we are not persuaded the statements constitute any proof regarding the existence of an HOA.

The record conclusively reflects that an HOA existed. First, creation of an HOA was automatic under the restrictive covenants after all lots were sold. Second, the record contains bills for the residents' shared expenses sent by Martin on behalf of the HOA. A July 2015 bill, which was for expenses from January 2013 to July 2015, is referred to as "the Home Owners bill." After that, Martin sent bills more frequently. In October 2015, Martin sent the bill by e-mail with a subject line "Stacy Road HOA Bill." Each month from November 2015 to February 2016, Martin prepared statements with the heading "HOA Stacy Road Statement." After that, the Litchenburgs took over the billing, something the parties discussed in an e-mail from Martin with a subject of "Transfer of HOA Bills."

Another reason Clark and Martin give to show the HOA did not exist is that it did not meet the requirements for non-profit entities under the business organizations and tax codes or for a property owners' association under the property code. Nothing in the restrictive covenants required these formalities. Indeed, that they provided for automatic creation of an HOA reflects an intent that formalities were unnecessary, and the HOA operated for years without them. Nor

–14–

have Clark and Martin demonstrated that the statutes they cite apply to the facts of this case involving a three-property HOA.

Clark and Martin also assert the trial court erred in denying them a declaratory judgment that the restrictive covenants were void and unenforceable and that they have a right to place a gate on their property and that the Litchenburgs can keep it open for no longer than two minutes when coming to or going from their property. Clark and Martin merely repeat arguments we have already rejected, such as waiver and the nonexistence of an HOA.

## C. Permanent Injunction

Clark and Martin also contend the permanent injunction found in the final order fails "on the pleadings, rulings, and evidence" for several reasons. They argue the trial court's injunction is outside the scope of the pleadings for two reasons. First, they contend the language prohibiting a gate across the common access drive that another owner would have to pass through to get to his property should have included a limitation that "the gate was in violation of the restrictive covenants." Clark and Martin have not included a citation to the record to indicate where they raised this complaint about language in the final order to the trial court. They did not file any post-judgment motions. We will not consider this argument for the first time on appeal. *See* TEX. R. APP. P. 33.1(a). They also contend appellees did not request affirmative removal of the existing fence. We disagree. Appellees' application for injunctive relief asked that the court permanently enjoin Clark and Martin from installing a gate and sought removal of the fence. In addition, the first amended petition included a prayer for "[s]uch other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled." *See Whiteco Metrocom, Inc. v. Industrial Properties Corp.*, 711 S.W.2d 81, 84 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (prayer for general relief, along with request that restrictive covenants be enforced authorized court to order removal of billboard).

–15–

Further, Clark and Martin argue the permanent injunction does not describe in detail the acts to be restrained and is too broad. Clark and Martin failed to file a post-judgment motion or otherwise raise a complaint about the language in the court's final order. The failure to raise these complaints in the trial court constitutes a waiver of the issue on appeal. *Martinez v. Mangrum*, No. 02-17-00235-CV, 2018 WL 1956224, at *4 (Tex. App.—Fort Worth Apr. 26, 2018, no pet.) (mem. op.); *Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 765–66 (Tex. App.—Texarkana 2017, pet. dism'd); *see* TEX. R. APP. P. 33.1(a).

In addition, Clark and Martin argue appellees were not entitled to a permanent injunction because there was no "wrongful act." They present several reasons why there was no wrongful act. First, they argue there was no finding of liability on appellees' underlying cause of action for tortious interference. A permanent injunction cannot be granted absent a finding of liability on some underlying cause of action. *Roper v. Jolliffe*, 493 S.W.3d 624, 633 (Tex. App.—Dallas 2015, pet. denied); *see Van Der Linden v. Khan*, 535 S.W.3d 179, 203 (Tex. App.—Fort Worth 2017, pet. denied) (injunctive relief is remedy, not stand alone cause of action). Here, there was an underlying legal action for violation of the restrictive covenants. Injunctive relief was an appropriate remedy for Clark and Martin's wrongful act of violating the covenants. *See, e.g., Vance*, 534 S.W.3d at 476.

Clark and Martin next argue there was no wrongful act because the covenants do not bar the gate or fence. In support of this argument, Clark and Martin cite sections 10(A) and 14(A) of the restrictive covenants. Section 10(A) concerns utility easements and section 14(A) involves common areas on the land. Clark and Martin ignore the more relevant provisions of the restrictive covenants we have already discussed. The covenants required Clark and Martin to obtain written approval from the HOA before for constructing any fence or gate. It is undisputed that Clark and Martin did not seek or obtain approval of their plans for a fence and gate. Under the plain language

of the restrictive covenants, it was a wrongful act for Clark and Martin to erect a fence and gate on their property.

Clark and Martin also argue there was no wrongful act because the "construction permission" portions of the restrictive covenants are void and unenforceable. They maintain no HOA was formed therefore there was no mechanism in place for getting approval for their proposed gate. In a related argument, they assert there was no wrongful act because installation of the fence was done with just cause or excuse since there was no method by which they could obtain approval of their fence. We have already rejected the argument that there was no HOA. Martin herself acted on behalf of the HOA in collecting payment for shared expenses.

Next, Clark and Martin argue there was no wrongful act because Texas law permits a gate on their property in the access easement. They cite two cases involving the scope of express easements and whether property owners could construct gates along the easements. These cases are distinguishable because neither involved restrictive covenants. *See Greenwood v. Lee*, 420 S.W.3d 106 (Tex. App.—Amarillo 2012, pet. denied); *Barrow v. Pickett*, No. 01-06-00664-CV, 2007 WL 3293712 (Tex. App.—Houston [1st Dist.] Nov. 8, 2007, no pet.). Here, in the face of the clear language of the covenants barring a gate or fence without approval of the HOA, this argument fails.

Clark and Martin further argue appellees are not entitled to injunctive relief because the "great weight of the evidence demonstrates that there is no support for the required element of an 'irreparable injury.'" They also contend there was no inadequate remedy for appellees. To obtain injunctive relief in restrictive covenant cases, however, it is not necessary to show irreparable injury or imminent harm. *Bankler*, 75 S.W.3d at 39; *Jim Rutherford*, 25 S.W.3d at 849. As such, we need not address Clark and Martin's complaint that the trial court erred in admitting Alfred

–17–

Litchenburg's testimony about lost home value, as there did not need to be any showing of injury or harm.

### D. Attorney's Fees

Finally, Clark and Martin contend the trial court erred in awarding attorney's fees for several reasons. They complain again the issue of attorney's fees should have been determined by the jury. We have already rejected this argument.

Clark and Martin argue the fee award must be reversed because opposing counsel did not segregate his fees. Texas law does not allow recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). As a result, fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not. *Id.* at 311.

When appellees' counsel testified about his fees during the bench trial, opposing counsel asked him whether he had segregated his fees. Counsel's response indicated he had not. Clark and Martin contend appellees' sole claim was for tortious interference, which was a claim for which attorney's fees were not recoverable. But the record does not reflect any attorney's fees were awarded for tortious interference. The true nature of appellees' lawsuit was to enforce the restrictive covenants. The restrictive covenants provided for recovery of legal fees incurred for a legal action to enforce them.

Similarly, Clark and Martin contend appellees were not entitled to attorney's fees because they did not prevail on their sole claim for tortious interference. Again, appellees prevailed in their action to enforce the restrictive covenants and enjoin Clark and Martin from installing the gate and fence.

Next, Clark and Martin argue appellees are not entitled to attorney's fees because they did not plead for them under section 17 of the restrictive covenants. *See, e.g., Goldman v. Olmstead*,

–18–

414 S.W.3d 346, 367 (Tex. App.—Dallas 2013, pet. denied) (party waived right to recover attorney's fees under contract because they failed to plead for recovery of fees under contract). Clark and Martin point out that, in their first amended petition for tortious interference, the Litchenburgs sought to recover attorney's fees under chapters 37 and 38 of the civil practice and remedies code. They fail to acknowledge that in the application for injunctive relief filed after Clark and Martin started putting up a gate, appellees pleaded that they were entitled to attorney's fees under the restrictive covenants. In addition, in an action for breach of a restrictive covenant, an award of attorney's fees to a prevailing party is mandatory. TEX. PROP. CODE ANN. § 5.006(a); *see also Sides*, 2019 WL 2529551, at \*16 (if party is entitled to mandatory award of attorney's fees, how he asks for them is irrelevant).

Further, because Alfred Litchenburg testified that he had not yet "incurred," meaning paid, any attorney's fees, Clark and Martin contend appellees failed to submit evidence they incurred attorney's fees. Clark and Martin have not sufficiently briefed their argument as they have cited no legal authority in this paragraph of their brief. *See* TEX. R. APP. P. 38.1(i) (brief must contain appropriate citations to authorities). And proof of fees actually incurred or paid is not a prerequisite to the recovery of attorney's fees in Texas. *In re Estate of Johnson*, 340 S.W.3d 769, 787 (Tex. App.—San Antonio 2011, pet. denied).

In addition, Clark and Martin argue appellees were not entitled to fees because they did not recover actual damages. They cite a single case for this proposition, *Gulf States v. Low*. In that case, the court considered whether the plaintiff was entitled to attorney's fees under the DTPA. 79 S.W.3d at 567. He did not present evidence to support recovery of any actual damages under the DTPA, so he was not entitled to attorney's fees under the statute. *Id.* Here, unlike *Gulf States*, appellees prevailed in their action for enforcement of the covenants and obtained an injunction against Clark and Martin. The contractual language of the attorney's fee provision required Clark

–19–

and Martin, as the homeowners found in violation of the covenants, to pay attorney's fees to the party enforcing the covenants.  We overrule Clark and Martin's third issue.

We affirm the trial court's final order.


/Ada Brown/
ADA BROWN
JUSTICE

180278F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

FRANK RONALD CLARK AND
JACQUELINE D. MARTIN, Appellants

No. 05-18-00278-CV     V.

ALFRED LITCHENBURG, KELLI
LITCHENBURG, PAUL SIMON, AND
LARRY JEAN LINDEN, Appellees

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-00983-2016.
Opinion delivered by Justice Brown,
Justices Bridges and Nowell participating.

In accordance with this Court's opinion of this date, the trial court's final order is
**AFFIRMED**.

It is **ORDERED** that appellees Alfred Litchenburg, Kelli Litchenburg, Paul Simon, and
Larry Jean Linden recover their costs of this appeal from appellants Frank Ronald Clark and
Jacqueline D. Martin.

Judgment entered this 26th day of August 2019.